# 𝔚𝔥𝔢𝔢𝔩𝔦𝔫𝔤.

## REBECCA GRAHAM *et al. vs.* LANTY GRAHAM *et al.*

### January Term, 1870.

A clause in a will, among others, reads as follows: "I give unto my daughter *Rebeckah* Graham and her children, that plantation where she now lives, known by the name of Stephenson's cabin. Also, I give unto her and her children, my negro girl named Dinah, the land and negro never to be disposed of out of the family, nor the increase of the negro if she has any." Another and subsequent clause reads as follows: "all the before mentioned *legasies* thus bequeathed to my children, I give unto them and their heirs forever, according to the way they are stated." HELD:

> That the devise to Rebecca was an estate tail, and by operation of the statute was converted into an estate in fee.

This was a suit brought by bill in chancery, in the circuit court of Monroe, filed at November rules, 1859. The bill alleged that James Graham made his will in 1812, and having died shortly thereafter, it was duly admitted to probate in Monroe county. That among other devises and bequests was the following: "I give unto my daughter *Rebeckah* "Graham and her children that plantation where she now "lives, known by the name of Stephenson's cabin. Also I "give unto her and her children my negro girl named "Dinah, the land and the negro never to be disposed of "out of the family, nor the increase of the negro, if any "she has." And also this provision: "all the before men- "tioned *legasies* thus bequeathed to my children, I give unto "them and their heirs forever, according to the way they "are stated." That Rebecca Graham was the daughter of the testator, and wife of Joseph Graham who had lately de-

ceased, and that at the making of the will and at its probate, there were four children of Rebecca living. It further alleged that the complainants were the children of Rebecca, except one who was the daughter and devisee of one that had deceased, and one other, John Graham, who was a son, and who was made a defendant. It asked partition of the land into five parts, and the proceeds of the sale of the negroes, which sale had been made by Rebecca, likewise into five portions.

The defendant Rebecca, answered the bill, claiming that by a proper construction of the will, she acquired an estate in fee, and that she had occupied continuously and enjoyed it from the death of her father. That she was the sole and exclusive owner of the whole of the property and estate bequeathed and devised.

The court below, on the 25th of May, 1869, decreed a partition of the land into five parts, one to Rebecca and the residue to the four children, including the daughter and devisee of the one deceased. It also decreed four-fifths of a sum of money to be paid by Rebecca to the children, for the hire of the slave Dinah, and four-fifths of the sum arising from the sale of two slaves, the increase of Dinah, which sums had been ascertained by a Master under a previous decree.

From this decree the defendants appealed to this court.

Hon. N. Harrison, judge of the circuit court of Monroe, presided on the hearing of the cause.

*Allen T. Caperton* and *Hereford* for the appellants, argued the following point elaborately:

The court erred in decreeing Rebecca Graham only one-fifth, whereas she was entitled to the whole.

That it was the manifest intention of the testator to create an estate tail, and that he did so, which by the statute is made an estate in fee: see will. See Code of Virginia, 1860, page 559, sec. 9. *Merriman* vs. *Merriman*, 5 Munf.,

440; *Bells* vs. *Gillespie,* 5 Rand., 273; *Bramble* vs. *Bellups,* 4 Leigh, 90; *Goodrich* vs. *Harding,* 3 Rand., 280; *Moore et al.* vs. *Brooks,* 12 Gratt., 135; 8 Idem, 346; 11 Idem, 78; 1 Leigh, 321; 7 Leigh, 103; 9 Leigh, 253; 13 Gratt., 289.

*Samuel Price* for the appellees.

BROWN, *President.*

In the construction of a will the first object is to ascertain the intention of the testator, for what he intended is to control, it is in fact the soul of the will; but it is to be drawn from the will, the whole will taken together, and not from an isolated clause. *Kennon* vs. *McRobert,* 1 Wash., 96; *Reno's Ex'or* vs. *Davis,* 4 H. & M., 283; and *Land* vs. *Atley,* 4 Rand., 213. Looking then, to the will before us, it is manifest from its various provisions taken together, and from the whole scheme of the will, that it was the intention of the testator to give to his daughter Rebecca an estate tail in the land and negro described in the tenth clause of the will.

The 10th clause is in these words: "I give unto my "daughter *Rebeckah* Graham and her children the planta-"tion where she now lives, known by the name of Stephen-"son's cabin. Also I give unto her and her children my "negro girl named Dinah, the land and negro never to be "disposed of out of the family, nor the increase of the ne-"gro, if any she has."

The first part of this clause by itself would give an estate in fee to the mother and her children jointly, but the latter part of the clause is inconsistent with such an estate, and such an intent. What, then, was the intent? If the clause stood alone it might be difficult to ascertain the intent; but even then it is believed that the idea of an estate tail is the only one reconcilable with a sound construction of the whole clause. But when it is viewed in the light of the whole will, the meaning and intent of the testator becomes clearly apparent. For instance, in the 7th clause: "I give unto

"my son Lanty Graham, the plantation on which I now live, "to him and to his heirs forever; but if he shall not have "legal heirs of his own body, the said land is to go to his "brother James," &c.

Here the first part of this 7th clause creates an estate in fee, but the subsequent part of the clause is inconsistent with such an estate, and with such an idea, but it makes it equally plain, that the testator intended to limit the estate to his son Lanty and the lawful heirs of his body; in other words, an estate tail.

But the thirteenth clause removes all ambiguity. It is in these words: "All the before mentioned legacies thus "bequeathed to my children, I give unto them and their "heirs forever, according to the way they are stated."

The complainants would interpret *children* in this thirteenth clause to include grand-children, but that is unjustifiable, and clearly not the intention of the testator. But this thirteenth clause does clearly show that all the legacies thus bequeathed to his children, were to them, and not to their children; and when the testator says, "Thus bequeathed to my children,"—"unto them and their heirs forever," it is manifest he does not mean that he gives the legacies to his children and their heirs forever, for that would be an estate in fee; but he goes further and limits the fee by the words "according to the way they are stated;" and the way they are stated in the respective clauses taken together, shows that the word "heirs," as used in this and the respective clauses, is not used in the sense of *heirs general*, but *heirs special* of their bodies.

The will then gives to Rebecca Graham an estate tail in the land and slave before mentioned; under the operation of the statute that estate tail was converted into an estate in fee. *Merriman* vs. *Merriman*, 5 Munf., 440; 2 Munf., 263; *Sydnor* vs. *Sydnor.* And Lanty, Florence, John and James, children of Rebecca Graham, took nothing by the said tenth clause of the said will of their grandfather.

I think, therefore, that the decree of the circuit court

should be reversed, and the bill dismissed, with costs to the appellants in both courts.

Berkshire, J., concurred with Brown, P.

MAXWELL, J., *dissentiente.* The intention of the testator is to give the rule of construction. If the testator use legal phrases, his intention should be construed by legal rules. If he use words that are common, his intentions, according to the common understanding of the words he uses, should be the rule.

The words which we are called on to construe are, "I "give unto my daughter *Rebeckah* Graham and her children "that plantation where she now lives, known by the name "of Stephenson's cabin." These words are a part of a certain paragraph in the will, but of themselves constitute a complete sentence. Rebecca Graham had four children living at the time the will was made, and at the time it was admitted to probate.

It seems to me that the words of the will give to Rebecca Graham, and her four children, the plantation named, in joint tenancy, and that the words used are too plain to admit of construction. *Smith* vs. *Chapman,* 1 H. & M., 240; *Wild's case,* 6 Coke, 17; *Garbrand* vs. *Mayot,* 2 Vernon, 105; *Oates* vs. *Jackson,* 2 Strange, 1172. It is claimed that the case of *Merriman* vs. *Merriman and others,* 5 Munf., 440, is inconsistent with this opinion.

The case of *Merriman* vs. *Merriman* is not fully reported, but the language of the will, though not given, seems to have been a gift of "five negroes, and their future increase "to Mary Merriman and to her and her children forever." It seems to me that the effect of the words first used was to vest in Mary Merriman the title to the negroes, and that it was not the intention of the testator, by the words subsequently used, to divest such title and revest it in her and her children, and that the court could not have decided otherwise than it did. If the gift had been to "Mary Mer-

" riman and her children, and to her and her children for-
" ever," the case would have been very different, and would
have been in substance like the one under consideration.

I think the decree complained of ought to be affirmed,
with damages and costs.

DECREE REVERSED,