# CHARLESTON.

## MARTIN v. MARTIN.

Submitted June 18, 1902.   Decided March 14, 1903.

52 381
59 647

| 52 | 381 |
| 61 | 265 |
| 61 | 268 |

| 52 | 381 |
| f65 | 751 |

| 52 | 381 |
| 66 | 61 |

1. DEVISE—*Legal Heirs.*
    A devise to B. K. M. "and to his child or children by him begotten in lawful wedlock" of certain real estate; and, if the said B. K. M. should "die without leaving any child or children living at the time of his death begotten by him in lawful wedlock," then over; the said B. K. M. having had no child either at the date of the will or at the time of the death of the testator, but four children having been born to him in lawful wedlock after the death of the testator, does not entitle the children to take an interest in the land as joint tenants or tenants in common with the said B. K. M. and they cannot have partition of the land, as against him.  (p. 386).

2. JURISDICTION—*Wills.*
    Jurisdiction in equity to construe wills is limited and special, and will only be exercised as incident to general equity jurisdiction, and then, in a particular case, only to the extent of determining whether or not the relief sought can be granted.  (p. 394).

Appeal from Circuit Court, Marion County.

Action by Jessee H. Martin against Benjamin K. Martin, *et als.* Judgment for plaintiff and defendant appeals.

*Affirmed.*

HENRY M. RUSSELL AND W. S. MEREDITH, for appellees.

JOHN BASSELL AND CAMPBELL, HOLT & DUNCAN, for appellant.

POFFENBARGER, JUDGE:

This is a suit for partition, in which the granting, or refusing, of the relief sought, depends upon the construction of the will of Jesse Martin, of Marion County. The testator had no children born in wedlock, but left several illegitimate children born of Cinderella Koon, a woman who resided with him. For three of these children, Melissa Koon, Benjamin K. Martin and John Jefferson Martin, he provided in his will. The devise of a tract of land, lying in Marion County on the waters of Tygart's Valley River, to Benjamin K. Martin, is the clause involved, and reads as follows:

"4th. I will and bequeath and devise unto Benjamin K. Martin infant son of said Cindrella Koon single woman that now lives with me and to his child or children by him begotten in lawful wedlock all my real estate in Marion County on Booths Creek and its waters and on the waters of Tygarts Valley river containing four hundred and eighty acres more or less which I hold under sundry titles purchased of different individuals together with all and singular the appurtenances thereunto belonging subject to the conditions and limitations hereinafter named."

The conditions and limitations referred to in the foregoing clause are found in the eighth clause of the will and read as follows:

"If the said Benjamin K. Martin die without leaving any child or children living at the time of his death begotten by him in lawful wedlock then the above legacy and bequest of real estate is to go to the said John Jefferson or his lawful children if he be dead leaving at the time of the death of the

said Benjamin K. but if he be dead leaving no lawful child or children at the death of the said Benjamin K. then the said legacy of the said Benjamin K. shall descend to said George T. Martin."

The bill for partition was filed by Jesse H. Martin, son of Benjamin K. Martin, against the said Benjamin K. Martin, Sarah B. Hunsaker, Bertie E. Holt and Nettie Martin, sisters of the plaintiff, and alleges that the plaintiff is entitled to one fifth of the land, on the theory that, under the fourth clause of the will, the said Benjamin K. Martin and his four children take equal shares of the land in fee simple, each child born to the said Benjamin K. Martin taking his full equal share at his birth. Benjamin K. Martin having sold nine acres of land to John F. Bice, who afterwards conveyed the same to Charles Smith, and a tract of about fourteen acres to George W. Manley, which is now claimed by Harriett Manley and John R. Manley, said Smith and Harriett and John R. Manley are also made parties defendant.

The bill shows that Benjamin K. Martin was born February 29, 1844; that the will was made April 2, 1852; that Jesse Martin, the testator, died May 1, 1859; that Benjamin K. Martin married April 5, 1866; that Jesse H. Martin, the plaintiff, was born of said marriage February 14, 1867; and that Sarah B. Hunsaker (nee Martin), Bertie Holt (nee Martin), and Nettie Martin were born of said marriage, respectively, May 10, 1870, February 2, 1874, and November 1, 1881. So Benjamin K. Martin had no child or children either at the date of the will or at the time of the death of the testator.

The demurrer of Benjamin K. Martin to the bill was sustained and the bill dismissed on the 20th day of July, 1899. The plaintiff, Jesse H. Martin, died in April, 1901, after having made a will by which he devised his interest in the land to Charles E. Manley, Charles Powell, C. L. Shaver and Reuben Anderson, giving one-half to Manley, and the other half to the other three persons in equal shares. These devisees have appealed from the decree sustaining the demurrer and dismissing the bill. In their petition for the appeal they set out the death of the plaintiff and exhibit with it his will and the record of the probate thereof, and aver that they are the persons to whom the

plaintiff therein devised his interest in the tract of land in controversy.

Counsel for the appellee, Benjamin K. Martin, insist that, before an appeal could be taken, the suit must have been revived in the name of the personal representative of Jesse H. Martin in the court below, although it is admitted that there is no express provision in the statute relating to revivor in a case in which there has been a final decree before the death of the plaintiff but no appeal taken prior thereto. As supporting this contention, *Booth* v. *Dotson,* 93 Va. 233, 24 S. E. 935, is cited. In that case, Booth recovered a judgment in an action of debt against Dotson, assigned the judgment to his brother, and afterwards died. A writ of error was allowed in his name, but it was dismissed, although it was agreed by the parties that the judgment had been assigned as aforesaid. What the court would have done had the assignee of the judgment procured the writ of error in his own name, after showing by his petition that he was the owner of the judgment, is not intimated. Had that been done the case would have been very much like this one. "Where one of the parties to a suit or action dies before the taking of an appeal or writ of error, if the cause of action survives, the appeal or writ should be prosecuted by or against the legal representatives of the decedent. At common law, in both personal and real actions, when plaintiff in error dies before the assignment of error the writ of error will abate." 2 Cyc. 769. The subject matter of this suit is real estate with which the personal representative has nothing whatever to do. He has no title to it and no duty relating to it is devolved upon him by the will. All the testator's right, title and interest are vested by the will in these appellants. In respect to it, they as fully represent him as his heirs would, had he died intestate, in which case his legal representatives, as to the land, would have been his heirs. The appellants therefore, are not only the only persons having any interest in the suit, but they have shown that fact in their petition. It could have been controverted here by the appellee, but he has not done so and it must be taken as true. *Phares* v. *Sanders,* 18 W. Va. 336, 340. In that case it was held that a revival of the judgment in the court below was unnecessary and that, if the personal representative alleged in his petition that, since the judgment was rendered, the defendant had died and

that petitioner had been appointed administrator of the personal estate of the decedent, it was sufficient to entitle him to prosecute the writ of error. By the death of the defendant and appointment and qualification of his administrator, the title to the claim in controversy vested in the latter, and empowered him to prosecute the appeal. So here the will of Jesse H. Martin has vested the title to the land in the appellants, and given them the right to prosecute any proceeding that is necessary to the protection of that title. The motion to dismiss should be overruled.

Proceeding now to consider the main question, it is first to be noted that no case has been decided by this Court, which involved the construction of a will like this one. *Graham* v. *Graham,* 4 W. Va. 320, has been cited as sustaining the contention of counsel for the appellee, that Benjamin K. Martin took, under this will, an estate tail, which, by our statute, section 9 of chapter 71, is converted into an estate in fee simple. That section reads in part as follows: "Every estate in lands so limited that, as the law was on the seventh day of October, in the year one thousand seven hundred and seventy-six, in the State of Virginia, such estate would have been an estate tail, shall be deemed an estate in fee simple." If the words determining the estate of Benjamin K. Martin are such as would, under the law as it was in Virginia, prior to October 7, 1776, have created an estate tail, the theory of counsel for appellee is correct. There is no clause in the will which can be said to indicate a contrary intention. In fact, the various clauses all taken together strongly indicate an intention on the part of the testator to keep his estate, as far as possible, in the hands of certain of his illegitimate children, for these clauses are full of limitations over, upon certain contingencies, from one to another. The chief characteristic of an estate tail is, that it ties up the property in a family. The statute in which estates tail originated, and known as the statute *de bonis conditionalibus,* was called a family law. 2 Min. Ins. 81. In clause eight of the will it is provided, as to the property given Melissa Ann Koon, that if she die before she marries, leaving no children alive at her death, it is to go to Benjamin K. Martin and John Jefferson Martin in equal parts, if they be living; but, if either of them be dead without leaving lawful child or children, it

is to go to the survivor, and if one be dead, but leave children, one moiety is to go to those children and the other to the survivor, and if both be dead leaving children, their children are to have it, and if both be dead leaving no children, it is to go to George T. Martin. As to the property given to John Jefferson Martin, it is provided that, if he die leaving no lawful child or children living or in being, it is to go to Benjamin K. Martin, if living, but if dead and leaving child or children, living at his death, it is to go to his child or children, and, if he be dead leaving no child or children, his interest is to go to George T. Martin. By a codicil, the testator afterwards substituted his brothers, John Martin and Joseph Martin, for George T. Martin.

So the intent of the testator, as gathered from the terms of the will, does not, in any way, conflict with the idea or theory of a limitation in tail to Benjamin K. Martin. It remains, however, to determine whether, under the rules of construction, applicable to wills, the estate of Benjamin K. Martin is so limited that, as the law was prior to October 7, 1776, it would have been an estate tail. The language of the will in *Graham* v. *Graham,* cited, is entirely different in some respects from that used here. In that instrument, there was no gift over in default of issue or heirs. Here, there is. So far as the report of that case discloses, there was no reference in the will to any default of issue. Here the will says, if the said Benjamin K. Martin die without leaving any child or children living at the time of his death begotten by him in lawful wedlock, the property shall go to others named. In the *Graham Case* there were clauses indicating an intention that the property disposed of should never go out of the family. As to all of the property so given, there was one clause which said: "I give unto them and their heirs forever, according to the way they are stated." This language expressly creates an estate tail. No such language is found any where in this will. For these and other reasons which might be assigned, *Graham* v. *Graham* is not applicable here.

While an estate tail may be general, naming only one parent, by whom the heirs contemplated are to be procreated, and, in that, the sex may, or may not, be designated; or, special, naming both parents by whom the heirs who are to inherit shall be procreated, and, in that, they may be designated and limited by sex; it is essential to an estate tail that the instrument creating

it shall contemplate an indefinite failure of heirs of the class named. In other words, no particular time is named when the failure shall occur. It is left uncertain as to whether it will ever occur, and made certain that the estate shall never end as long as there are descendants of the first-taker, within the class to whom the estate is limited. 2 Min. Ins. 80, 81; 3 Jar. Wills, (5th Am. Ed.) 200; 2 Blk. 110-115. In view of this, the words "If the said Benjamin K. Martin die without leaving any child or children living at the time of his death begotten by him in lawful wedlock," are very important in the construction of this will. If the language had been, if he die without issue, or if the gift over had been in default of issue, a different case would be presented. These words would clearly have imported an indefinite failure of heirs, but the language of this will does not do so. The first-taker under the will, Benjamin K. Martin, could have had no child or children living at the time of his death, and yet have had lineal descendants, born in lawful wedlock, surviving him who could have taken the inheritance, if limited to them. But the language used cuts them out. Ordinarily, the words child or children are words of purchase, vesting a new estate in those persons, and not words of limitation, ineffectual to vest an estate, but effectual to mark out the limits of the ancestor's estate, showing it to be an estate of inheritance and prescribing the course of descent. Therefore, when they are used in a deed, they are never words of limitation, and they are always words of purchase in a will, unless the context and circumstances are such as to show that they were used in the sense of heirs and with the intent to make them words of limitation 2 Min. Ins. 75, 76 and 81; 3 Jar. Will (5th ed.) 174-199. See 6th ed., vol. 2, pp. 383, 390. When they are so used as to be words of limitation they do not constitute an express limitation in tail. The devisee takes such an estate by implication. "Thus a devise to A and his children and their heirs, if A has children at the time of the devise, is a joint estate in fee simple in A and those children; but if A have no children at the time of the devise, the obvious intent of the testator can only be effected by supposing that he used the word *children* in the sense of issue, and so, in order to accomplish the intent, A would take by implication, such as is allowed in wills, an estate tail." 2 Min. Ins. 75. But such implication does not arise when the words which,

under those conditions, are supposed to have been used by the
testator in the sense of issue, negative the theory of an indefinite
failure of issue. "We now proceed to inquire into the grounds
upon which words importing a failure of issue are restrained
to such failure at the death, in regard to real estate. It is clear
that they receive this construction where the event of dying is
confined to a definite age. Thus a devise to a person and his
heirs, with a limitation over if he shall die under the age of
twenty-one and without issue, is construed, not as creating an
estate tail, with a contingent remainder dependent on the event
of the first-taker dying under the specified age (as would be
the effect, if the words were construed to import an indefinite
failure of issue,) but as a devise in fee simple, subject to an
executory limitation over in the event of the prior devisee's death
under the given age and leaving no issue surviving him. The
same principle probably would be considered as extending to
every case in which a dying without issue is combined with
an event personal to the individual, as the event of his dying
without issue and unmarried or without leaving a husband or
wife—which is the meaning of unmarried in this situation."
3 Jar. Will (5th ed.) 308, 309. See 6th ed. vol. 2, p. 468.
"Where the testator expressly devises over the estate in the
event of the preceding devisee dying without leaving issue liv-
ing at the time of his death, the language of the will seems to
exclude all controversy; and yet we have an adjudication on
the simple point in *Doe d. Barnfield* v. *Wetton.* The restricted
construction, however, has been sometimes adopted where the
intention was much less unequivocally expressed. Thus, in
*Porter* v. *Bradley,* where the testator devised certain lands to
his son P., his heirs and assigns forever; but his will was, that
in case he (P.) should happen to die leaving no issue *behind
him,* then that his (testator's) wife should take the rents, and
have his in-door goods, as long as she should continue his widow,
and no longer; and after her decease or marriage then the lands
so devised to P. as aforesaid, unto his son J. and his heirs,
chargeable with fifty pounds apiece to the testator's daughters
and their issue within a twelve-month after he (J.) should en-
joy the same; but in case J. should die before P., and P. should
not leave any issue of his body begotten, then the testator di-
rected the lands to be sold, and the money to be paid to the

daughters. The court of K. B. held, upon the authority of
*Pells* v. *Brown,* that the words imported a dying without issue
living at the death, considering the words "leaving no issue be-
hind him" as equivalent in point of fact to the words "living
William" in' that case; and Lord Kenyon considered the subse-
quent parts of the will to convey the same idea; for the devisor
had mentioned (*quaere* treated?) this event as likely to hap-
pen in the lifetime of his widow' or of his younger son or
daughters." 3 Jar. Wills (5th ed.) 312. See 6th ed. vol. 2, p.
470. In *Pells* v. *Brown,* Cro. Jac. 590, the devise was to the
testator's son, Thomas, and his heirs forever, and if he died with-
out issue living William, his brother, then William to have those
lands to him and his heirs and assigns forever. There the
court held that Thomas did not take an estate tail, but an
estate in fee, subject to an executory devise; for it was said
the clause, if he die without issue, was not absolute and in-
definite, whensoever he died without issue, but it was with a
contingency, if he died without issue living William, for he
might survive William, or have issue alive at the time of his
death, living William, in which case William should never
have it. In *Barnfield* v. *Wetton,* 2 B. & P. 324, referred to by
Jarman, the syllabus reads as follows: "Devise 'to S. S. her
heirs and assigns forever; but if she shall happen to die leav-
ing no child or children lawful issue of her body living at the
time of her death, then to F. B. and his heirs.' *Held,* that the
devise in fee to S. S. was not restrained by the subsequent words
to an estate tail; and that the devise over to F. B. was a good
executory devise." From these authorities it seems very clear
that the language of this will is insufficient to constitute and
vest an estate tail.

That it does is contended for, however, upon what is known
as the rule in *Wild's Case,* 6 Co. 17 A. & B. There, the
devise was to a person and his children, and that person had no
child at the time of the devise, and the court held that the
parent took an estate tail, saying, "the intent of the devisor is
manifest and certain that the children (or issues) should take,
and as immediate devisees they cannot take, because they are
not in *rerum natura,* and by way of remainder they cannot
take, for that was not his (the devisor's) intent, for the gift is
immediate; therefore, such words shall be taken as words of

limitation." The principle applied in *Davie* v. *Stevens,* Dougl. 321, where the devise was to the testator's son, S., when he should accomplish the full age of twenty-one years, of the fee simple and inheritance of Lower Shelstone, to him and his child or children forever, but if he should happen to die before twenty-one, then over to the testator's wife forever. S. was unmarried at the death of the testator and it was held that he took an estate tail, there being no children to take an immediate estate by purchase. So also in *Seale* v. *Barter,* 2 B. & P. 485; where the devise was as follows: "It is my will that all my lands and estates shall after my decease come to my son J. and his children lawfully to be begotten, * * * *, and for default of such issue, then "over in like manner to a daughter. J. had no child at the date of the will, but a living daughter at the testator's death, and the court held that he took an estate tail. In *Broadhurst* v. *Morris,* 2 B. & Ad. 1, the testator devised all his share of two estates to his daughter for life and at her decease to her husband for his life, and at his decease, he directed the whole legacy to him should go to the testator's grandson B. and to his children lawfully begotten forever; but in default of such issue at his (B.'s) decease to G. and his heirs. B. was unmarried at the testator's death and the court held that the devise conferred upon him an estate tail. It will be noticed that in all these cases the language was such as to import that the testator contemplated and intended an indefinite failure of issue. That, as has been said, is an essential characteristic of a limitation in tail. It is clearly wanting in the devise contained in the will now under consideration. Again, it must not be overlooked, that an estate, vesting under the rule in *Wild's Case* is not one expressly limited in tail. It is only by construction that, in such case, an estate tail is found and declared. By construction of the whole will, it is found that it was the intention of the devisor that the children should take under the will, and that there is no other estate which can be vested in them. They cannot take as mediate devisees because they are not in existence. They cannot take as remaindermen because the gift is immediate. That they may have any estate under the will, which clearly shows the intent that they shall have an estate under it, it is necessary to hold the word children to be a word of limitation and not of purchase and declare the existence of an

estate tail, an estate of inheritance vested in the parent to descend to the child, and which, under the statute of *de donis,* could not be defeated by the parent, except by fine or common recovery, methods devised by the courts for the purpose of avoiding that statute and releasing the property. 2 Min. Ins. 83, 84; 2 Blk. 117. Had there been an express limitation in tail, the restricted construction resulting from the use of the words "without leaving any child or children living at the time of his death begotten by him in lawful wedlock," would not affect the estate, it is said in 3 Jar. Wills, (5th ed.) 312, n. *v;* (6th ed.), vol. 2, p. 470 n. *r.* This should harmonize with the rule of construction, that if an estate is conveyed, or interest given, or benefit bestowed, in one part of the will, by clear, unambiguous, and explicit words, upon which no doubt could be raised, to destroy or annul that estate, interest or benefit, it is not sufficient to raise a mist or doubt from other terms in another part of the instrument. The terms to rescind and cut down the estate or interest before given must be as clear and decisive as the terms by which it was created. 2 Min. Ins. 953; *Thornhill* v. *Hall,* 8 Bligh. 88, 107; *Collett* v. *Lawrence,* 1 Ves. Jr. 269; *Blake* v. *Bunbury,* 1 Ves. Jr. 195, n. 4; *Moobury* v. *Marye,* 2 Munf. 453; *Rayfield* v. *Gaines,* 17 Grat. 1; *Barksdale* v. *White,* 28 Grat. 227-'8; *Stark* v. *Lipscomb,* 29 Grat. 326. Had an estate tail been vested by technical language in Benjamin K. Martin, it is probably true that it would not be altered by the use of words indicating that an indefinite failure of heirs was not contemplated. But it is unnecessary so to decide, for no such estate had been expressly created. It is not intended here to decide, however, that the appellee has not an estate in fee simple. The discussion thus far is intended only to cast light upon the character of the will, with a view to ascertain whether the appellants are entitled to partition. If, at the time of the devise, whether that be the date of the will or the date of the testator's death in this case, Benjamin K. Martin had had children, they would undoubtedly have taken a joint estate with him. "Thus a devise to A and his children and their heirs, if A has children at the time of the devise, is a joint estate in fee simple in A and those children." 2 Min. Ins. (3rd ed.) 83; *Buffar* v. *Bradford,* 2 Atk. 220; *Hatterly* v. *Jackson,* 2 Srtange 1172. "What is meant by the time of the devise is not quite settled. It seems,

however, to be the better doctrine that we are to understand by it, not the date of the devise, but the period when it is to take effect, whether that be the death of the testator, or a time subsequent to that. * * * * It may be proper to add that a devise or grant to A and his children, supposing that there are children living then, or at the testator's death, creates a joint tenancy in A and those children." 2 Min. Ins. (3rd ed.) 84. The language of this will is, "I will and bequeath and devise unto Benjamin K. Martin * * * and to his child or children." Under no rule of construction can it be said that this language relates to a time subsequent to the death of the testator. The time of the devise is clearly not subsequent to that date. If the gift could be regarded as one to a class, including the father, the children would be excluded. An immediate gift to a class, one to take effect at the death of the testator, comprehends only those in being at that time. Jar. Wills (6th ed.) vol. 2, 167. "A number of persons are properly said to form a class when they can be designated by some general name, as 'children,' 'grandchildren,' 'nephews;' but in legal language the question whether a gift is one to a class depends not upon these considerations, but upon the mode of gift itself, namely, that it is a gift of an aggregate sum to a body of persons uncertain in number at the time of the gift, to be ascertained at a future time, and who are all to take in equal or in some other definite proportions, the share of each being dependent for its amount upon the ultimate number of persons." 1 Jar. Wills (6th ed.) 262; Paige on Wills, sec. 540. But, if, at that time, none of the objects of the gift exist, all the children who may subsequently come into existence will take by way of executory devise. 2 Jar. Wills (6th ed.) 180.

Nothing in the will militates against the view that the gift to Benjamin K. Martin and his children is immediate. No future time for distribution is fixed or indicated by any clause, nor does such intent appear from an analysis of the whole will. By the seventh, tenth, and eleventh clauses, provisions are made for the care and education of B. K. Martin and the care of the real estate until his attainment of the age of twenty-one years, but this does not conflict with the vesting of the estate in him. His guardian and the executors of the will, charged with these duties, were required to stand in a trust relation toward him.

Their possession was not in exclusion of his right. On the contrary, it was for his benefit and the protection of his estate. The subjecting of lands devised to trust for partial purposes, such as the raising of money, payment of annuities, or like, does not make the gift one *in futuro*. Such provisions do not postpone the vesting in possession. 2 Jar. Wills (6th ed.) 170. Such postponement requires an anterior gift, unless the language of the devise itself expressly, or taken in connection with the context or other expressions in the instrument, fixes a future time for distribution or vesting in possession. 2 Jar. Wills (6th ed.) 168. But if the gift were held to take effect upon the attainment of the age of twenty-one years by B. K. Martin, his children would still be excluded, for none had been born to him at that time.

Being immediate and to a person and his unborn children, the devise cannot be considered as one to a class. One of the reasons for this is that the rule governing such devises would exclude the children and thereby defeat the clearly expressed intention of the testator. Its application in *Wild's Case* would have wholly excluded the children. The long line of cases falling under the rule in *Wild's Case* all condemn the theory that such devises are gifts to classes. They also firmly establish the proposition that the children do not take as joint tenants or tenants in common with the parents under such devises. Could they have so taken, the courts would not have been driven to the necessity of devising another way of giving them anything at all under such wills. It was said that the devise was immediate, and that they could not take as immediate devisees, because they were not in being. While all these precedents deny the existence of a joint tenancy, or tenancy in common, none have been found which hold the other way. Hence, it is established that under a devise to a person and his children, he having no children at the time of the devise, neither a joint tenancy or tenancy in common between the parent and after-born children is created, unless by some other part of the will it appears that the testator so intended.

But, if the devisee has a child at the time of the devise, such child will take an equal share with the parent. *Hatterly* v. *Jackson,* 2 Str. 1172; *Moore* v. *Leach,* 50 N. C. 88; *Gay* v. *Baker,* 58 N. C. 344; *Hunt* v. *Satterwaite,* 85 N. C. 73; *Hampton* v.

*Wheeler,* 99 N. C. 222. In such case, the estate will open and let in after-born children. Where the devise was to A for life, and, after her death, to her children, it was held that the mother and all the children took as joint tenants, and that it was no objection that, by this means, the several estates began at different times. *Halterly* v. *Jackson,* 2 Str. 1173.

As it is manifest that the appellants have no present right to possession or enjoyment of any part of the land, it becomes wholly unnecessary to determine whether an estate in fee simple is vested in the appellee. If the will gives him a life estate only, and the remainder in fee to the children, the appellant is not entitled to have partition of the land. *Merritt* v. *Hughes,* 36 W. Va. 356, wth the array of authorities there cited, settles this question beyond controversy.

What estate the father does take is an interesting question. Under similar wills, some of the courts have held that he takes an estate in fee simple. *Bentz* v. *Bible Society,* 86 Md. 102; *Hood* v. *Dawson,* 98 Ky. 285; *Gillispie* v. *Schuman,* 62 Ga. 252; *Silliman* v. *Dawson,* 119 N. C. 89. On the other hand, some courts have held that the will vests in him a life estate, and the remainder in fee in the children. *Carr* v. *Estill,* 14 B. Mon. (Ky.) 309, holding that a devise "to Mary Baker Didlake and her children," she having had no children at the time of the devise, gave her a life estate and the children the remainder in fee. *Fales* v. *Currier,* 55 N. H. 392, holding that a deed to a woman and her children, she having had no child at the time, gives her a life estate only and remainder in fee to her after-born child. *Turner* v. *Ivie,* 5 Heisk. (Tenn.) 222, in which the will was peculiar.

It is claimed, however, that, although the appellants, if entitled to take by way of remainder, cannot have partition, the court may, in this suit, construe the will. A suit can never be entertained for the sole purpose of construing a will. There must be an actual litigation in respect to matters which are proper subjects of equity jurisdiction, such as relief on behalf of an executor, trustee, *cestui que trust,* or legatee. It is a special and limited jurisdiction incident to general equity jurisdiction over trusts and administrations. Pom. Eq. Jur., sections 1156, 1157. This being true, the Court cannot be called upon to interpret the will, further than is necessary to determine whether

the person is entitled to the relief sought by his bill. It is true, equity has jurisdiction for compulsory partition, but, if it clearly appears that the plaintiff is not entitled to have it, he cannot require the Court to say whether he may, at some future time, be in a position to demand it.

For the reasons here given, the decree is right and should be affirmed.

*Affirmed.*

BRANNON, JUDGE—(*Concurring*) :

I concurr in the conclusion. My reason is, that by the will Benjamin K. Martin took a life estate and his children, no matter when born, the remainder. These children cannot have partition until the life estate ends. I do not think that the question of fee tail arises, because by the will estates for life and remainder are created. It says "I will, bequeath and devise to Benjamin K. Martin and to his child or children." If the testator had stopped there, the law given by JUDGE POFFENBARGER to show that the children could not take because born after the testator's death would apply; but the testator did not stop there; he went on and told both Benjamin K. Martin and the children that the devise was "subject to the conditions and limitations hereinafter named." Go on, then, down the paper to those "conditions and limitations" thus annexed to the devise, and we find the language, "If the said Benjamin K. Martin die without leaving any child or children living at the time of his death, then the above legacy and bequest of real estate is to go to the said John Jefferson or his lawful children." Here he tells Benjamin that he has only a life estate, else why give it to John Jefferson, if Benjamin has no children? But how if he has children? The will answers that it goes to his children. Where else would it go? We might well say that if there were not above an express devise to the children, the limiting clause would by strong implication, give to the children living at their father's death, as there may be legacies by implication where there is manifest intent to do so. *Bartlett* v. *Patton,* 33 W. Va. 71; Schowler on Wills, sec. 561; Paige on Wills, sec. 468. But go back and we find an *express* devise to the children, and the last clause tells what is meant by that devise to them, tells that they take only at the death of the father. The question whether the

plaintiffs have right to a partition depends on the construction of the will, whether they have any estate under it, and if so, what, and I think this is essentially included in the *ratio decidandi* and ought to be decided. After a little thought the testator's intent seems plain.