## Lewis's Appeal.

1. The words "share," "part" and "portion" are frequently used in wills as synonymous, when applied to property acquired from an ancestor; and the word "portion" is most comprehensive. It includes all property or estate thus received.

2. A testator by his will bequeathed to his daughter A. $10,000 in cash and certain bank and railway stock. After making other bequests, he provided that "all the rest and residue" of his estate should be divided into "three shares," one of which "shares" should go to A., in addition to the preceding bequests to her. By a codicil testator afterwards provided as follows: "the share and portion of my estate which by my said will I have given to my daughter A. I direct shall be held by my executors in trust," to invest and pay the income to A. for life, with remainder over to certain grandchildren.

   *Held*, that the words "share and portion," in the codicil, included the special legacies to A. as well as the residuary bequest, and that she, therefore, took only a life interest therein.

3. By a subsequent clause of the codicil, the executors were authorized to sell the testator's real and personal property, "the proceeds of which as respects the share and portion hereinbefore given to A. shall be held in trust . . . . ."

   *Held*, that this clause was not inconsistent with the interpretation above set out.

November 11th, 1884. Before MERCUR, C. J.; GORDON, TRUNKEY, STERRETT, GREEN and CLARK, JJ. PAXSON, J., absent.

APPEAL from the Orphans' Court of *Allegheny county:* Of October Term, 1884, No. 222.

Appeal of Anna W. Lewis from a decree of said court, making distribution of the estate of Edward Duff, deceased.

Edward Duff died testate, November 10th, 1882, leaving a daughter, Mrs. Anna W. Lewis, one son, William Duff, and children of a deceased son, George Duff. By his will, dated September 4th, 1880, he provided as follows:

"I give and bequeath to my daughter, Mrs. Anna W. Lewis,

ten thousand dollars in cash; also all my stock in the First National Bank of Pittsburgh, consisting, at the present time, of forty-six shares, and all my stock in the Pittsburgh and Birmingham Passenger Railway Company, consisting now of forty-four shares. . . . . .

"All the rest and residue of my estate, real and personal, shall be divided into three shares, which shares shall be given and distributed as follows:

" One of said shares to my daughter, Anna W. Lewis, which is in addition to the other bequests hereinabove given to her. One of said shares to my son, William Duff, and the other of said shares to the children of my deceased son George, namely, . . . . ."

By a second codicil to his will, dated April 28th, 1881, the testator made the following provision:

" The share and portion of my estate, which by my said will I have given to my daughter, Mrs. Anna W. Lewis, I direct shall be held by my executors in trust, to invest and re-invest the same, and to pay to her, during her natural life, the interest and income thereof, every six months, after deducting the expenses of the trust, and at and immediately after her death to transfer or convey the principal thereof to the children of my deceased son, George Duff, and their issue, in the same proportion as I have directed in respect to the share which I have given to said children in and by my last will and testament.

" And in order to render the divison of my estate more easy and speedily to be accomplished, I authorize and empower my executors to sell my real estate and also my personal estate, on such terms and at such times as they may deem advisable, the proceeds of which as respects the share and portion hereinbefore given to my daughter, Mrs. Anna W. Lewis, shall be held in trust as above provided."

Upon the audit of the executor's account, it was contended by Mrs. Lewis that the codicil related only to her share in the residuary estate, and not to the cash, and the bank and railway stock. The court below, however, ruled that the trust created by the codicil extended to everything to which Mrs. Lewis was entitled under the will, and made a decree accordingly. Whereupon Mrs. Lewis took this appeal, assigning said decree for error.

*J. McF. Carpenter*, for appellant.—The codicil only revokes a will so far as such revocation is absolutely necessary to give effect to the depositions contained in the codicil: Wigram on Wills, p. 6, 2d part; Westcott *v.* Cady, 5 Johnson Chan. 345; Langdale *v.* Briggs, 28 L. T. N. S. 467; Quincy *v.* Rogers, 9

Cush. 291. The words portion and share are convertible terms: Jarman on Wills, vol. 1, p. 309, and refer to parts of some general whole. The words are used with reference to something which bears a definite proportion to the whole estate, and are never understood to refer to particular devises. or bequests, unless no other interpretation can possibly be given them. The testator here used the word share in his will as referring to the residuary estate, and no doubt intended it to have the same meaning in the codicil. The codicil also authorizes a sale by the executors, and continues, "the proceeds of which sale, as respects the *share and portion* hereinbefore given to my daughter . . . . . shall be held in trust . . . . ." That is equivalent to saying that the "share and portion" is to be derived from the "proceeds of sale." The special bequest to Mrs. Lewis was largely of money, and it can hardly be contended that the testator meant to provide for the sale of money.

*Thos. C. Lazear*, for appellees.—The words " share and portion " in the codicil included both the special legacies and the residuary bequest. Bouvier's Law Dic. defines a share to be " a portion of anything—sometimes shares are equal, at other times unequal." And in the same book, (vol. II. p. 433), portion is defined to be " that part of a parent's estate, or the estate of one standing *in loco parentis*, which is given to a child," citing in support of this definition: 1 Vern. 204; 8 Com. Dig. 539; 16 Viner. Abr. 432; 1 Supp. to Ves. Jr. 34; 2 Id. 46.

Either of the words *share* or *portion*, would therefore have been sufficient to comprehend everything which Mrs. Lewis was to receive under her father's will.

The trust created by the first paragraph of the second codicil to the will, is in no manner changed by the second paragraph, except that in the event of a sale of any of his estate, the trust is to follow the proceeds and attach thereto so far as Mrs. Lewis's share is concerned, as provided in respect to the same before conversion. The clause giving authority to sell the real and personal estate, as said by the court below, " did not affect the nature of the gift, but is a provision having reference to the administration of the trust."

Chief Justice MERCUR delivered the opinion of the court, January 5th, 1885.

By the original will of Edward Duff he gave and bequeathed to his daughter, Mrs. Anna W. Lewis, ten thousand dollars in cash; also all his stock in the First National Bank of Pittsburgh, and all his stock in the Pittsburgh and Birmingham Passenger Railway Company. After making other bequests

to other persons, the testator proceeds to declare " all the rest and residue of my estate, real and personal, shall be divided into three shares, which shares shall be given and distributed as follows: one of said shares to my daughter, Anna W. Lewis, which is in addition to the other bequests hereinabove given to her," and then goes on to dispose of the other two shares.

: In the second codicil to his will the testator, inter alia, declares " the share and portion of my estate which by my said will, I have given to my daughter, Mrs. Anna W. Lewis, I direct shall be held by my executors in trust to invest and re-invest the same, and to pay to her during her natural life, the interest and income thereof, every six months, after deducting the expenses of the trust, and at and immediately after her death," remainder over to the children of his deceased son, George Duff, and their issue. , ,

The present contention is whether the trust created by this codicil applies to all the property previously bequeathed to Mrs. Lewis, or only to a part thereof. The appellant contends that the trust does not apply to the cash, and to the bank and railway stock, previously given to her. The correctness of this position is to be determined by a fair interpretation of the language of the codicil.

· It must be conceded as a settled rule of construction that all the provisions of a will shall stand which are not inconsistent with those of the codicil. To that extent only does the latter operate as a revocation of the former. The dispositions of the former must not be disturbed any further than are absolutely necessary for the purpose of giving effect to those of the latter: Jarman on Wills 162. A clear and unambiguous disposition of property in the former cannot be revoked by doubtful expressions in the latter: Id. 168. ,

. A codicil in its practical effect is part of the will, all making but one testament. Hence if there be any conflict, the latter disposition shall prevail. .

ı The very purpose of a codicil is to alter the will or to modify its effect. In this codicil the testator so far modifies it as to change the use of " the share and portion " of his estate, which he had previously bequeathed to Mrs. Lewis. He makes no reference to the character, value or items of the property which he had given her. · The language is as broad and comprehensive as if it read "all the property " he had given her. It was all the share or portion or part of his estate, which she was to receive, as distinguished from the shares and portions given to the other devisees. The main thought in the mind of the testator was to throw some safeguards around all the property which he intended to devise and bequeath for the

use of Mrs. Lewis during her life; to protect her in the interest and income therefrom, and on her death, to pass the *corpus* over to his grandchildren.

The several words, share, part, portion, are very frequently used as synonymous. When applied to property acquired from one's ancestor, the word "portion" is the most comprehensive that can be used. It is broad enough to include, and is intended to cover all the property or estate thus received. Thus "portion" is defined in Bouv. Law Dictionary 350, to be that part of a parent's estate, or of the estate of one standing in the place of a parent which is given to a child. The language of the codicil imposes the trust on all that portion of the testator's *estate* in which he intended Mrs. Lewis to have any interest. The word estate in a will is broad enough to carry everything, unless restrained by particular expressions: 1 Term Rep. 411; 2 Id. 656; Turbett *v.* Turbett *et al.* 3 Yeates 187. The devise of a testator's "estate" includes not only the *corpus* of the property, but the whole of his interest therein: 3 Jarm. on Wills 31.

Mrs. Lewis was a widow and childless. The testator did not wholly revoke the bequests which he had made to her. He merely changed the custody, and modified the use of the property.

We cannot give weight to the fact that the word "share" had previously been applied to the residuary estate. We have shown it to be synonymous with the word "portion." If this be incorrect, then the word portion was intended to refer to other property than the residuary estate. This is just as damaging to the claim of the appellant as if the words were synonymous. If the word share was intended to apply to the residuary estate only, and the words have not the same meaning, then the word portion, which had not been applied to that particular estate, was intended for other property, and if so was necessarily designed to cover the other estate or property which had been bequeathed to her.

It is not necessary to refer to the numerous English and American authorities which hold as a canon of construction that a clear gift cannot be cut down by any subsequent words, unless they show an equally clear intention. In applying this rule it is sufficient that the subsequent words indicate the testator's intention to cut it down with reasonable certainty, and it is not necessary to institute a comparison between the two clauses as to lucidity: 1 Williams on Ex'rs 185. It cannot be cut down by any doubtful expressions in the codicil. The language of the latter must be such as to clearly establish the modification claimed before such effect can be given to it. We concede these to be the settled rules of construc-

tion. Applying them to the codicil in question, we think the language therein contained clearly, intentionally and unmistakably refers to all the property previously devised to Mrs. Lewis.

We see nothing in the fact that the executors were authorized to sell the real and personal estate of the testator, and to hold her share and portion in trust for her, as aforesaid, to change the conclusion at which we have arrived: Rawle's Appeal, 10 Out. 193. The learned judge committed no error in making the decree.

> Decree affirmed and appeal dismissed at the costs of the appellant.