## Rankin's Estate.

*Wills—Construction—Share of estate—Bequest.*

1. Where a sister who is entitled to a distributive share in the estate of her deceased brother, makes her will by which she gives to her nephew "whatever my share of my brother's estate may be," and thereafter she is paid $1,000 on account of her share, all of which she retains in bank until her death, with the exception of $40.00, and after her death the remainder of her share in her brother's estate is paid to her executor, the nephew is entitled to an amount of money equal to his aunt's share in that portion of the estate of her brother which the latter's will, or the law cast upon her at the moment of his death.

2. In such a case the fact that when the aunt's will was made the money representing her share was still in the hands of the brother's administrator, whereas at the time of her death a part of it had come into her own hands, is immaterial.

Argued May 4, 1909. Appeal, No. 132, April T., 1909, by Fannie Rankin, from decree of C. O. Indiana Co., Dec. T., 1907, No. 24, sustaining exceptions to auditor's first report, and confirming auditor's second report in Estate of Mary G. Rankin, deceased. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Exceptions to report of William Banks, Esq., auditor. Before TELFORD, P. J.

The facts appear by the opinion of the Superior Court.

*Errors assigned* were in sustaining exceptions to auditor's first report, and confirming auditor's second report.

*J. W. Fisher,* of *Cunningham & Fisher,* for appellant.— Where bequests are of a generic character, that is to say, the bequests are of that which may be increased or diminished in the lifetime of the testator, they are subject to the Act of June 4, 1879, sec. 1, P. L. 88: Fidelity Ins., etc., Co.'s App., 108 Pa. 492.

The legacy to William Rankin is specific, and is, therefore, subject to ademption: Smith's App., 103 Pa. 559; Ludlam's Est., 1 Parsons, 116; Walker's Est., 3 Rawle, 229; Blackstone v. Blackstone, 3 Watts, 335; Fidelity Ins., etc., Co.'s App., 108 Pa. 492.

The annihilation of a specific bequest, or such a change in its state as makes it another thing, annuls the bequest, for reasons paramount to consideration of intention: Blackstone v. Blackstone, 3 Watts, 335.

And where a portion of the thing specifically bequeathed is disposed of or changed in the lifetime of the testator this acts as a pro tanto ademption: Alsop's App., 9 Pa. 374; Ludlam's Est., 13 Pa. 188; Hoke v. Herman, 21 Pa. 301; Smith's App., 103 Pa. 559; Harshaw v. Harshaw, 184 Pa. 401.

*Ernest Stewart,* for appellee, cited: Reynolds's Est., 11 Pa. Dist. Rep. 387.

OPINION BY HEAD, J, December 13, 1909:

Mary G. Rankin, the testatrix, made her last will and testament on November 24, 1905, and died on November 5, 1906. Robert Rankin, the brother of the testatrix, had died some time previous to the writing of the said will and his estate was in process of settlement. The said testatrix, as one of his legal heirs, was entitled to a distributive share in his

estate, although the record does not disclose the fractional portion of that estate to which she was entitled. On December 5, 1905, a few days after the date of her will, there was paid to her by the administrator of her brother's estate, on account of her distributive share therein, the sum of $1,000. This sum she had deposited in bank to her credit, and $960 of it there remained until after her death. The settlement of her brother's estate was not finally completed until a short time after her own death, when the final balance to make up her full distributive share was paid to her administrator. This amounted to $1,275.50, which, with the payment previously made to her in her lifetime, showed that the aggregate value of her share in her brother Robert's estate was about $2,300.

Her will upon its face discloses the fact that the scrivener who wrote it was an illiterate person. It does not follow from this, however, that the language of her will is either unusual or ambiguous, or its meaning obscure. In the construction of wills it is of the first importance to keep in mind that outside of a few broad and well-known exceptions—to which we need not now advert—the policy of the state is to permit the individual citizen to dispose of his property according to his own wishes. His intentions are to be gathered from the will itself and the language used therein, and so long as this language is plain and free from obscurity, when we accept the meaning given to it in the common speech of the people, there is no necessity to resort to the aid of artificial canons of construction. In speaking of one of these rules, Chief Justice MITCHELL, in Mulliken v. Earnshaw, 209 Pa. 226, said: "Like all artificial rules it had the constant tendency to become an arbitrary fetter instead of a mere instrument for the ascertainment of the testator's intent. The policy of the later cases in this state, if not everywhere, is to get back to the true rule of looking only to the actual intent. There is no sound reason in the nature of things why the actual meaning of the person using the words should not be sought in the case of a will exactly as it is in the case of a contract."

The clause in the present will which gives rise to this conten-

tion is that in which the testatrix gives to her nephew, Wm. C. Rankin, "whatever my share of my brother Robert's estate may be." What was her share in her brother Robert's estate under the facts already recited? Certainly, according to the common understanding of men, her share was that portion of the estate of her brother which his will or the law cast upon her at the moment of his death. Whilst its exact value in dollars and cents could not then be determined, it was nevertheless a vested property interest, subject to all of the incidents of other like property. It could have been sold or assigned by her, attached for her debts, or bequeathed by her last will and testament. Whilst the value of this share might increase or diminish above or below what the heir, his assignee or his creditor, might estimate it to be, the share itself would remain unchanged and would continue to be the same thing that was cast upon the heir immediately on the death of the ancestor. The words used in the will, then, giving to them their common and accepted meaning, were aptly descriptive of certain property of the testatrix, and the extent of this property, independent of its value in dollars and cents, was the same, whether it all remained in the hands of the administrator of the ancestor, or whether it had in part been paid to the heir, in this case the testatrix.

Of course, the property which she devised or bequeathed by her will was her own property, regardless of the source from which that property came to her. We look to her will then but to see what portion of her own property she intended by the language quoted to bequeath to the appellee, and we are unable to see any reason why the words she used were not aptly descriptive of a definite ascertainable portion of her own estate. Had she in her will given to her legatee all of the property which she inherited from her brother Robert, or all of that portion of her estate which she derived from her brother Robert, there could have been but little doubt as to what she intended to bequeath. The words she actually used, to wit, "whatever my share of my brother Robert's estate may be," we regard as synonymous with either of the former expressions.

We are not left without authority for the construction, which, after mature deliberation, we have placed upon the language of the testatrix, resulting from the interpretation of that language as it would be generally and ordinarily understood. From 7 Words and Phrases, 6473, 6474, where many judicial decisions of the word "share" are collated, we quote the following: "The word 'share' ordinarily means a part or definite portion of a thing owned by a number of persons in common. It contemplates something owned in common by two or more persons, and has reference to that part of the undivided interest which belongs to some one of them. Turner v. Balfour, 62 Conn. 89. Again, share as used in statutes relating to the widow's share, described a portion of the estate of the decedent which the law assigns to the widow: Ward v. Wolf, 56 Iowa, 465." In 25 Am. & Eng. Ency. of Law, 636, it is said: "The word 'share' ordinarily means a part or definite portion of a thing owned by a number of persons in common." If we follow these decisions we must conclude that upon the death of the brother of the testatrix, his estate was owned in common by her and her coheirs, and her share in that estate, whatever its money value might afterwards be ascertained to be, was a fixed and definite thing, to wit, the portion of that estate which the law, or the will of her brother, cast upon her, and that portion, that fixed and definite thing, was aptly described by the expression "my share in my brother Robert's estate."

In Miles v. Wister, 5 Binney, 477, a testator bequeathed to each of his four children the sum of £400 in specie to be placed out at interest for their benefit until they should respectively attain the age of twenty-one years. He further provided that if any such child should die in his or her minority, the share of such child should be equally divided, etc. One of the children dying during minority, the question arose whether the bequest of its share carried the interest accruing on the investment or only the principal thereof, and it·was held in an opinion by TILGHMAN, C. J., that the expression included both principal and interest. In other words, all that would have gone to the deceased child as its portion or share.

In Lewis's App., 108 Pa. 133, it is said: "The several words share, part, portion, are very frequently used as synonymous. When applied to property acquired from one's ancestor, the word 'portion' is the most comprehensive that can be used. It is broad enough to include, and is intended to cover all the property or estate thus received. Thus 'portion' is defined in 2 Bouv. Law Dictionary, 701, to be that part of a parent's estate, or of the estate of one standing in the place of a parent which is given to a child. . . . We cannot give weight to the fact that the word 'share' had previously been applied to the residuary estate. We have shown it to be synonymous with the word 'portion.'" The words "portion" and "share" are convertible terms, 1 Jarman on Wills, *309, and refer to parts of some general whole.

In Reynolds's Est., 11 Pa. D. R., 387, the opinion was delivered by Judge PENROSE, whose wide learning and long experience in this branch of the law justly entitle his utterances to great weight. In that case the bequest was all "the property I inherited from my father." In holding that this was a bequest of everything which the testatrix had actually received from her father, the learned judge says: "With regard to the subject of the gift but little need be said. Questions as to ademption can only arise where the legacy, in the form in which it is given, is not in existence at the death of the testator,—as in the case of a specific gift of stocks or securities, or of a debt, or any article of property of a peculiar or designated kind. But here the gift to the brothers and sisters is not of that character. It is not of 'the securities' inherited from the father, or of property of any specific description, but 'the property I inherit from my father.' The word 'property' is used without any qualification, in its most general sense; meaning all that came from her father as distinguished from what came from any other source. A mere change of form in what she had thus 'inherited' does not change the source. Everything is given as to which the origin of her title or ownership was by inheritance from her father, and nothing short of actual loss or consumption in her lifetime can deprive the legatees of their right." We can

see no good reason why the language just quoted could not be with equal force applied to the will of the present testatrix. If, then, the testatrix, in her will used apt words to describe the portion of her estate she intended to bequeath to the appellee, how can it be successfully argued that this legacy had been adeemed, pro tanto, because she, in her lifetime, reduced to possession a part of that, to wit, her share in her brother's estate, which had been hers from the moment of his death, and remained hers until the moment of her own death? The destruction of a legacy, perhaps to a favored legatee, is a conclusion that ought not to be hastily reached, and the decisions indicate that where the substance of the thing bequeathed remains, changes in its form are of but little consequence.

In Shupp v. Gaylord, 103 Pa. 319, where a testator gave to B, a legacy of $500 a year, "and the said yearly payment of five hundred dollars is to be paid out of rents accruing under and from the lease of coal to the Wilkes-Barre Coal and Iron Company, if the said rents fail not to be paid," it was held by Judge RICE, presiding in the court below, and affirmed by the Supreme Court that "the legacy to B was not extinguished by the forfeiture of the original lease by the decree of the circuit court, but is payable out of the rents of the specific property of the testator made the subject of that lease, if there are sufficient rents produced to pay it." In Black's Est., 223 Pa. 382, it was held that "where a testator bequeaths the proceeds of two bonds to legatees and it appears that during his lifetime the bonds were paid off, the proceeds invested in a mortgage, and after testator's death the mortgage was paid off and the proceeds came into the hands of the accountant, the legatees are entitled to the proceeds and a claim that the legacies were adeemed, cannot be sustained."

We agree of course with the learned counsel for the appellant that the will of the testatrix speaks only from the moment of her death, but the expression used in it just as certainly described a portion of her property at that moment as it did on the day on which the will was written. If at the date when she made her will the words she used therein would have

been aptly descriptive of a fixed and ascertainable portion of her estate, how did they lose their descriptive force because, before her death, she had reduced to possession a part of her property, as to which before then she had but a right of possession? The fact that when her will was made the money representing her share was still in the hands of the administrator, whereas at the time of her death a part of it had come into her own hands, does not seem to us to be sufficient to turn us to a different conclusion. Her share in her brother's estate, with the exception of the $40.00 drawn from the bank and expended, had neither been aliened, consumed nor destroyed down to the moment of her death. It remained in substance the same thing at the time of her death that it was at the moment she inherited it or at the date her will was written. After having given the most careful consideration to the able argument so earnestly pressed upon us by the learned counsel for the appellant, we are still forced to the conclusion that the construction of the will of the testatrix adopted by the learned court below was the correct one, and that in affirming the decree made, we are but carrying into effect the intention of the testatrix as she expressed it in language of her own choice.

Decree affirmed and appeal dismissed at the costs of the appellant.