# Horner's Estate

*Walter B. Hayes*, for estate.

*Vincent K. Keesey*, trustee ad litem, for persons unborn.

GROSS, P. J., April 10, 1947.—At the audit of the first and final account of the executor of the estate of William R. Horner, deceased, his three sons made claim

to the sum of $68,952.93, being the amount of their father's interest in the estate of his deceased brother, Charles F. Horner.

Decedent, William R. Horner, died November 13, 1945. His wife, Henrietta C. Horner, died November 20, 1936. By his will dated September 22, 1933, after giving several pecuniary bequests, he created a trust of his residuary estate, the net income of which is to be paid to his wife during her natural lifetime, and upon her death, the income to be paid to his three sons, Richard H., William W., and George F. Horner in equal shares, during their natural lives, with power of appointment given in a codicil dated November 27, 1936, to each son upon his death as to one third of the corpus of the trust, which if not exercised, then over under the intestate laws.

Decedent provided further in said codicil as follows:

"Should my vested interest in the estate of my brother, Charles F. Horner, deceased, become available during my life or after my death, it shall not at any time become a part of the trust estate for which I have already made provision, but shall be paid in equal shares to my three mentioned sons or their heirs as soon as a legal distribution of this inheritance can be made."

The records of this court show that said Charles F. Horner died July 4, 1933, and that William R. Horner, this decedent, was the executor of his estate and filed his account of his administration of that estate in this court on September 21, 1944, delayed by reason of the belated death of the last of his three sisters for the benefit of whom a trust was created by his will. This account was duly audited and distribution made in our report filed on November 13, 1944, in which we awarded to William R. Horner, this decedent, his interest as a general legacy in his brother's estate, the sum of $68,952.93, made up of $9,978.49, in cash, and $58,974.44 of securities in kind.

It is conceded that, on November 27, 1944, this decedent deposited the $9,978.49 cash in his checking account in The York County National Bank; that, on January 16, 1945, he deposited in said account the sum of $3,747.26, the proceeds from the sale of $4,000 par value Seaboard A. L. 4's of said securities and, on July 17, 1945, he also deposited in said account the sum of $2,080, the proceeds from the sale of $2,000 par value Pennsylvania R. R. Co. 3¾'s of said securities, making total deposits for securities sold by decedent of $15,805.75. The balance in said checking account at all times exceeded the amount of said deposits.

At his death, decedent was possessed of certain securities, appraised as part of his estate, at the sum of $26,216.83, which were positively identified as part of the original securities awarded to him out of his brother's estate. Of the identified securities $2,726.20 were sold by his executors and accounted for in their account. Adding the two bank deposits, totaling $15,-805.75, to the $26,216.83, we get the sum of $42,022.58. As to the remaining securities awarded to decedent out of his brother's estate, representing the sum of $26,-930.35, the difference between $68,952.93 and $42,-022,58, there is no record as to what happened to them. They cannot be identified among decedent's assets; nor can the proceeds from the sale or other disposition of the same or any part thereof be traced into any other kind or form of asset owned by the decedent.

The trustee ad litem for unborn and unascertained persons who have, or may have, an interest in the distribution of the balance on the account, admits, and we think properly so, that the three sons are entitled to the securities in kind found in the possession of decedent at his death, of the value of $26,216.83, but objects to the claim of the sons to the bank deposits of $15,805.75, and the $26,930.35, representing the value of the unidentified securities, on the ground that the legacy given to the sons by the codicil is a specific

legacy, and that there was an ademption of the legacy, except as to the securities found in the possession of decedent at his death. Let us first consider the bank deposits of $15,805.75.

Ademption applies only to a specific legacy or devise. It grows out of the rule that a will is not effective until death and therefore, as the subject matter of a specific legacy does not then exist, the will cannot be effective with respect to it. If a gift is not specific, the question of ademption cannot arise: Smith's Appeal, 103 Pa. 559. In Lenhart's Estate, 344 Pa. 358, the Supreme Court defines a specific legacy, as follows:

" 'A specific legacy is a gift of a specific thing, or of some particular portion of the testator's estate, which is so described by the testator's will as to distinguish it from other articles of the same general nature.' "

In Wilson's Estate, 260 Pa. 407, the Supreme Court, after a discussion of the several kinds of legacies, specific and demonstrative, thus concludes:

" 'The distinction (between them) seems to be this: If a legacy be given with reference to a particular fund, only as pointing out a convenient mode of payment, it is considered demonstrative, and the legatee will not be disappointed though the fund totally fail. But where the gift is of the fund itself, in whole or in part, or so charged upon the object made subject to it as to show an intent to burden that object alone with the payment, it is esteemed specific, and consequently liable to be adeemed by the alienation or destruction of the object.' "

In Horn's Estate, 317 Pa. 49, the Supreme Court, quoting from Hoke v. Herman, 21 Pa. 301, by Black, Chief Justice, said (p. 53):

" '. . . if a thing bequeathed in a will by such a description as to distinguish it from all other things be disposed of, so that it does not remain at the death

of the testator, or if it be so changed that it cannot be called the same thing, the bequest is gone. If such legacy be of a debt, payment necessarily makes an end of it. The legatee is entitled to the very thing bequeathed if it be possible for the executor to give it to him; but if not, he cannot have money in place of it. This results from an inflexible rule of law applied to the mere fact that the thing bequeathed does not exist, and it is not founded on any presumed intention of the testator.' "

In making the initial decision whether a legacy is general or specific, evidence of the testator is important. There is a presumption that a legacy is general and it will only be construed specific where such intention be either expressed in reference to the thing bequeathed, or otherwise clearly appears from the will: Wilson's Estate, supra. In ascertaining the intention of testator, his will is to be construed as of the date of its execution, while effect is to be given to it as of the date of testator's death: Pearson's Estate, 280 Pa. 224; Whiteside's Estate, 302 Pa. 452, and Miller's Estate, 323 Pa. 9.

To help further solve our inquiry, we may take into consideration testator's situation in life, the amount and character of his estate: Hermann's Estate, 220 Pa. 52. The codicil in the present will, which gives rise to this question of ademption, gives to decedent's three sons his "vested interest in the estate of my brother". Decedent left to survive him his three sons as his only heirs at law and next of kin, who would have been entitled to his estate had he died intestate. His "vested interest" in his brother's estate, although awarded to him partly in kind, was theoretically received by him in cash. He did not have in mind any specific stock, bond or integral part of the fund he would or might receive from his brother's estate when he made the gift to his sons, because distribution in

his brother's estate had not been made when he executed the codicil to his will. The gift is of the fund itself and is designated by testatrix as "my vested interest in the estate of my brother." The legacy is so connected with the fund out of which it is payable that the legacy and fund are the same. Under the authority of Smith's Appeal, supra; Wilson's Estate, supra, and the Estate of Mary E. March, 44 York 46, we hold that the legacy to the three sons, given by the codicil, is a specific legacy.

In Doud's Estate, 145 Pa. Superior Ct. 73, 75, the court held: "Where real or personal property is devised or given to be sold, and the proceeds are to be paid to a certain named person or persons, the legacy is specific." The only difference between the specific legacy of a particular thing and the specific legacy of the proceeds of a particular thing bequeathed is that, in the latter case the proceeds must be traced and identified as the proceeds of that specific thing. In Tweitmann's Estate, 293 Pa. 202, a testatrix gave the income from a mortgage to her husband for life, and directed that, if the mortgage is paid off, the proceeds shall be reinvested in mortgages, and further directed that a niece shall have "all of my mortgage money which may be left after my husband's death". The niece, after the husband's death, is entitled to the proceeds of the mortgage paid off during the wife's lifetime, upon showing that there was on deposit in the wife's bank account at least the amount of the mortgage at the time of her death. In the instant case the balance in decedent's bank account at all times exceeded the deposits of funds traced from the brother's estate and therefore under the authority of the Tweitmann case, we hold that the three sons are entitled to the bank deposits of $15,805.75. See also Black's Estate, 223 Pa. 382, and Frost Estate, 354 Pa. 223, holding the same doctrine. At this point we also hold that the sons are entitled to the specific securities found

in his possession and identified, at the appraised value thereof as of the date of his death plus the accrued interest and dividends thereon.

As to the unidentified and untraced securities awarded to decedent out of his brother's estate, alleged to be of the value of $26,930.35, a different situation arises. None of these securities, nor the proceeds thereof, could be traced and identified in decedent's possession at his death, and we therefore hold that, as to these securities, the sons fall short of proof and are not entitled to receive money in their stead. See Horn's Estate, supra; Rankin's Estate, 41 Pa. Superior Ct. 410, and Reynolds' Estate, 11 Dist. R. 387.

Subject to the payment of transfer inheritance tax and the apportionment of Federal estate tax, this legacy will be awarded from the balance of the first and final account of the executors, in accordance with our conclusions of law, as herein stated.