# CHARLESTON.

## STOUT *v.* CLIFFORD.

Submitted September 7, 1911.   Decided December 19, 1911.

WILLS—*Construction—Nature of Estate Devised.*

> The will in this case gives Sarah Clifford only an estate for life, with the remainder to testator's children vesting at his death.

Appeal from Circuit Court, Harrison County.

Bill by Clarence P. Stout against John H. Clifford and others. Decree for plaintiff and John H. Clifford and certain other defendants appeal.

*Affirmed.*

*John Bassel, Sperry & Sperry, Davis & Davis* and *George M. Hoffheimer,* for appellants.

*Edward D. Smith* and *Stephen G. Jackson,* for appellee Clarence P. Stout. *Philip P. Steploe,* for appellees Clifford Mc-Manaway and Angela McManaway.

BRANNON, JUDGE:

James Clifford made a will reading as follows, omitting formal opening: "I will and bequeath to my wife Sarah Clifford for and during her natural life all my real estate and personal property and also all my notes and bonds and bank stock of every description and kind and *after my wife is death* that the property if any is left shall be divided *eucely amoung* the children no bond or *security* shall be *required* of executor." He died in 1892 leaving his widow, Sarah Clifford, and seven children. One of these children, Agnes, married Clarence P. Stout in 1898. Agnes Stout died intestate in 1899, leaving an infant child, Benjamin Clarence Stout, and this child died in 1900, leaving his father as his heir. Sarah Clifford, the widow of James Clifford, died in 1909. Clarence P. Stout, claiming as father and heir of his deceased infant son, Benjamin Clarence Stout, that he was entitled to one seventh of the real estate of James Clifford, brought a suit in the circuit court of Harrison county against the children of Clifford for a partition of the real estate left by Clifford. The case resulted in a decree holding that Stout was entitled to one seventh interest in said real estate, and that certain grand children of James Clifford had also shares therein in right of their dead parents, who died after the death of James Clifford, and directing a partition of said real estate. From this decree John Clifford, Sarah E. Dolan and Anna C. Brennan appealed.

What estate did the widow, Sarah Clifford, take under the will of James Clifford? On the answer to that question depends the decision of this case. A number of able and elaborate briefs discuss this case in many views, and cite dozens of cases from all quarters more or less bearing upon it. I shall not discuss any large fraction of them, because to do so would make an opinion prolix, and confusing and becloud rather than enlighten. To

the members of this Court the case has not seemed difficult. The intent of Clifford in his will must control.

It has been well said that, "in disputes upon wills cases seldom elucidate the subject, which, depending on the intention of the testator, to be collected from the will, and from the relative situation of the parties, ought to be decided upon the state and circumstances of each case." So said President Pendleton in 1794 in *Shermer* v. *Shermer,* 1 Wash. 266. He added that he generally observed that cases more frequently *disappoint* than illustrate the intention, and that he was free to own that where a testator's intention was apparent to him, cases must be strong, uniform and apply pointedly, before they would prevail to frustrate that intention.

It is claimed for the appellants that Sarah Clifford, widow of James Clifford, under his will took an estate in fee, not a mere life estate, and only those who can claim as heirs under her can take any interest, which would shut out Stout, and that the decree giving him a share is erroneous. This ·contention that Sarah Clifford took a fee is based on the case of *May* v. *Joynes,* 20 Grat. 692, decided in 1857, and cases following it. That case involved a will by which the testator gave to his wife "my whole estate real and personal, especially all real estate I may hereafter acquire, to have during her life, but with full power to make sale of any part of the said estate and to convey absolute title to the purchasers, and use the purchase money for investment or any purpose that she pleases, with only this restriction, that whatever remains at her death shall, after paying any debts she may owe, or any legacies that she may leave, to be *devided* as follows:" then specifying limitations to his children and grand children. It was held that the wife took an absolute fee and that the limitation over of whatever remained at her death was inconsistent with such fee simple and failed. This is based on the doctrine spoken in *Burwell* v. *Anderson,* 3 Leigh 348, saying that from the earliest time it was received doctrine of common law, that an absolute and unqualified power of disposing, conferred by will, and not controlled or explained by any other provision, should be construed as a gift of absolute property; that the power of absolute disposition is the eminent quality of absolute property; that he who has the absolute prop-

erty and that he to whom is given the absolute power over an estate acquires thereby absolute property, unless there is something in the gift which negatives and over-throws this otherwise irresistible implication.    In *Milhollen* v. *Rice,* 13 W. Va. 510, Judge GREEN said this: "It is settled, that if a testator gives property to a devisee or legatee, to use or dispose of at his pleasure, that is, to consume or spend, sell or give away, at his pleasure, such devisee or legatee has the fee simple or absolute property, even though his interest in it be called by the will a life estate, and there be a provision in the will, whereby what may remain of the property at the death of the devisee or legatee is given to another person." It thus appears that a material, essential element of the rule just stated is that where a life estate is expressly given, to convert it into a fee there must be clear power of disposition given to the devisee of the life estate. Without at all assailing the rule above stated, we say that the rule does not apply in this case, does not govern this case. Why? Because Clifford's will does not contain such clear, distinct power in Sarah Clifford to sell or dispose of the land. That is the touchstone of this case. Look at the will. It contains no express power. It does not say, as did the will in *May* v. *Joynes* that Sarah Clifford should have power to sell or to will or otherwise dispose of the property. There is no such express power found in it. As Judge Poffenbarger said in *Bahrens* v. *Bauman,* on page 59 of 66 W. Va., "No power of disposition or consumption is expressly given her. In express terms her estate is defined as one for life." But it is said there is such power given by *implication* by the words, "after my wife is *death* that the property if any is left, shall be *devided eucely amoung* the children." Upon the four words, "if any is left," rests the contention that the life estate is elevated into a fee in the wife, and denying to the children all estate, though the testator has declared that they shall have the property after their mother's death. Thus what the words of the will declare to be a life estate is made a fee simple. Thus a remainder in fee written by the will is made nothing; and this by the magic force of those four words. We would think from the will and from the relation of father to wife and child and from our knowledge of the love of father for his children, that the father's

intent was to give the use of the property to his wife for life and remainder, after she had done with it, to the children of his loins. Our knowledge of love of father to wife and child would tell us this. We have right to place this Court in the place of Clifford, having wife and children to provide for. His duty to provide for all. The will does just what we would say he would do. The will to conform to this natural instinct of love; but the construction contended for defeats all this, forgets the children, and vests in the wife, who in her old age did not need it, a large property which she might lose by mismanagement or give away to a second husband or some body else, and leave seven children penniless. Shall we work this result by implication, a dim one at that? And this construction runs counter to a rule of law found in *Graham* v. *Graham,* 23 W. Va. holding "The heir will not be disinherited, unless it is done by the express terms of the will or by necessary implication. The heir being favored in law, there should be no strained construction to work a disinherison, where the words of the will are ambiguous." Those four words in this will are ambiguous, entirely impotent and inconclusive to bring about the construction sought to be given this will. Again I say the appellants rest their case on implication from the clause above quoted, and I repeat that it is not plain enough to work this result. The words of the will, to be conformable to what we would expect from a testator situated as was Clifford, give the widow only a life estate, plainly do this; yet this remainder is to be defeated by those few words. "When implications are allowed, they must be such as are necessary or at least highly probable and not merely possible. In construing a will conjecture must not be taken for implication. Necessary implication means so strong a probability of intention, that an intention contrary to that imputed to the testator cannot be supposed. The whole will taken together must produce the conviction, that the testator's intention was to create the estate raised by implication." *Graham* v. *Graham,* 23 W. Va., 37. See *Bartlet* v. *Patton,* 33 W. Va. page 78. *Coberly* v. *Earle,* 60 W. Va. 295 and 65 W. Va. 163. "A clearly expressed intention in one portion of the will is not to yield to a doubtful construction in another part." *Bell* v. *Humphrie,* 8 W. Va. 1, syl. 11. It was the general intent, the dominating intent of

Clifford to give only a life estate to his wife, the remainder to his children. The case cited, same point says, that "when the general intent of the testator is clear, and it is impracticable to give effect to all the language expressive of some particular intent, the latter must yield to the former." So, under this rule, and being ambiguous, if so, those four words would have to be eliminated and the provision for life estate and remainder prevail. But we can assign those words a reasonable office. We say that they must mean that Sarah Clifford could use personal property consumable in the use, and perhaps money or securities. Such uses as a life tenant could make. *Brant* v. *Coal Co.,* 83 U. S. 326; *Bartlett* v. *Patton,* 33 W. Va. 71. In *Behrens* v. *Bauman,* 66 W. Va. 56, the meaning given to such words is that they apply to personal estate in such use of life estate as a life tenant may make of it. Thus, we assign a meaning to those words consistent with the general intent of the will, plainly expressed by it, that is, to give a life estate to the wife, the remainder to the chilren. In the *Behrens Case* it is held that though a clause in a will *clearly* expressing a particular or special intent will prevail over such general intent, doubtful expression, merely susceptible of a meaning inconsistent therewith, will not do so. It says that if it is done by implication, it must be so plain that the contrary cannot be supposed. Our West Virginia cases uphold this construction of this will. Take the case of *Millhollen* v. *Rice,* 13 W. Va. 510. The will gave the wife personal property, "to use and dispose of at her discretion during her natural life, and also to have the right of disposal at her death." It was held, because of that power of disposal and use, that she took an absolute estate, though the will declared it to be a life estate; whereas, as to the land the will said that the wife during life might use it, but had only a life estate, the court saying that as there was no power of disposition given the wife as to the land she had only a life estate. Take the case of *Behrens* v. *Bauman.* A life estate given wife to be administered for the benefit of herself and others was not enlarged into a fee simple by the following phrase, describing the property to go over, "whatsoever may be left." The case also says that such indefinite expressions cannot be allowed the widest signification of which

they are capable, if, when so read, they conflict with the general intent expressed. The general intent in the will before us is to create a life estate for a wife and the remainder to children. That is what we would call under the case of *Morgan* v. *Morgan,* 60 W. Va. 327, the dominant intent. This purpose, the dominant or primary intent, in the language of Judge Cox, in that case, although there was language prescribing a life estate, yet, as there was plain intent to give complete power of disposition to the life tenant, she was held to have a fee simple; but in our case there is no such dominant intent in favor of the widow, and the case upholds our holding. I can, and do, cite even the case which is the fulcrum for the lever with which the appellants would lift the life estate to a fee (*May* v. *Joynes*) to support our position. Why so? Because the reason of decision in that case lies in the very broad and strong language found in the will in that case, giving the life devisee power of sale of land and to consume or give its proceeds by will. The want of such a clear clause repelled a fee in *McDonald* v. *Jarvis,* 64 W. Va. 62. That case calls for such a clause. Our case does so.

These principles close the case, and it is not necessary to notice some of the very many cases cited by counsel for appellants. *Riddick* v. *Cahoon,* 4 Randolph 547. An absolute legacy, with provision that if legatee die without issue, then all that shall be left at death, over to others. Here was an absolute gift, not for life, and under the principle that when an absolute estate is given and one inconsistent is given, the latter is repugnant and void.

So in *Elcan* v. *Lancasterian,* 2 Pat. & Heath 53. *Shermer* v. *Shermer,* 1 Wash. 266, goes on a clear power of disposal; intent governed. *Bowen* v. *Bowen,* 87 Va. 438; *Robertson* v. *Haidy,* 2 Va. Dec. 275, 23 S. E. 766; *Carr* v. *Effinger,* 78 Va. 197; *Davis* v. *Heppbert,* 96 Va. 775; *Hunter* v. *Hicks,* 109 Va. 615; *Hansbraugh* v. *Trustees,* 110 Va. 15; *Johnson* v. *Smith,* 108 Va. 725; *Randall* v. *Harrison,* 109 Va. 615. In these cases the wills give power of sale.

We admit that some late Virginia cases say that such words as "if any is left," in the Clifford will, give a fee to the life devisee by implication. *Farish* v. *Wayman,* 91 Va. 430; *Rolley*

v. *Rolley,* 109 Va. 449. We regard them unsound, and cannot follow them.

Under decisions in almost all other states, and in the U. S. Supreme Court, even such words of power of disposal as in *May* v. *Joynes* words give only a life estate. *Brant* v. *Coal Co.,* 93 U. S. 326. If their rule is followed, of course, the widow in our case took only a life estate. *Brown* v. *Strother,* 102 Va. 145. No life estate, and court said legatee had power of disposal.

Some of the children died before their mother died, and to exclude them, it is argued that even if we say that Clifford's will gives the widow only a life estate, with remainder to the children, that remainder would not vest until the death of the widow, and thus only those children then living would take. We do not accede to this position. The law favors the vesting of estates. *Suter* v. *Suter,* 68 W. Va. 690. That case would vest the remainder at testator's death. When Clifford said that upon his wife's death his estate should go to his children, did he not mean to at once give them an estate awaiting for possession and enjoyment only the end of the life estate? Why shall we say he intended to vest not until then? What purpose would he have for such postponement? Vested remainders are those by which a present vested interest passes to the party, though to be enjoyed in future, and by which the estate is invariably fixed to go to a certain person after the particular estate is spent. 11 Va. & W. Va. Encyclopedia Digest 817. "The true criterion of a vested remainder is the existence in an ascertained person of a present fixed right of future enjoyment." 24 Am. & Eng. Ency. Law, 389. There stood Clifford's children ready to take possession on their mother's death. The case of *Diehl* v. *Cotts,* 48 W. Va. 255, will sustain this holding. Thus we hold that Clifford's will gives his widow only a life estate, with remainder to his children, vested at his death, and affirm the decree.

*Affirmed.*

BRANNON, JUDGE. (Postcript Note):

Some time after the foregoing decision my attention is called to the case of *Herring* v. *Williams,* (N. C.) 73 S. E. 218,

where is found a full discussion of the construction of the will like the one in our case.    It will decidedly sustain our holding. The first decision was the other way; but on rehearing it was reversed.