## Foster's Estate.

Argued April 16, 1936. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

Arthur C. Dale and Ellis L. Orvis, for appellant.

Ivan Walker and John F. Voigt, with them Newton B. Spangler, for appellees.

OPINION BY MR. JUSTICE BARNES, October 5, 1936:

Irving L. Foster, a resident of the Borough of State College, Centre County, died June 1, 1929, survived by his widow, Nellie Patterson Foster. There were no children born of the marriage. According to the appraisement filed for transfer inheritance tax purposes, the decedent left a total estate of $91,086.00, of which $83,-236.00 represented personal property, mostly stocks and bonds; the balance consisted of real estate.

The decedent's will and a codicil thereto were probated June 6, 1929, and letters testamentary issued to the widow, as the executrix named therein. No bond was required as the executrix was a resident of the Commonwealth. In September, 1929, the widow moved to College Park, Maryland, taking with her all the securities of her husband's estate. Thereafter she took no steps to perform the duties imposed upon her by law as executrix of her husband's estate. No inventory or appraisement having been field by the executrix, on April 30, 1930, the court below upon the petition of the decedent's brother and sister, Warren W. Foster and Hattie F. Moore, issued a citation upon the executrix to file the inventory and appraisement required by Section 11(a) of the Fiduciaries Act of June 7, 1917, P. L. 447. In obedience thereto an inventory and appraisement of the decedent's personal property copied from that filed by the Commonwealth for the assessment of the inheritance tax, was filed on June 24, 1930.

No further duties in the administration of the estate were performed by the executrix, with the result that on September 29, 1930, Warren W. Foster and Hattie F.

Moore, claiming as heirs at law and residuary legatees under the will of the decedent, petitioned the court for a rule upon the executrix to file an account. To the citation issued upon this petition the executrix answered denying that the petitioners had any interest in the estate. A replication was filed and, after hearing, the court below determined that under the decedent's will and codicil the widow executrix was given a life interest in the income of the entire estate, but that upon her death the principal of the estate was to be distributed to the decedent's brother and sister as residuary legatees. Accordingly the court directed the executrix to file an account.

On January 23, 1931, a first and final account was filed, wherein the executrix took credit for the entire balance of the estate as having been paid to herself "as widow in accordance with the provisions of the decedent's will." To this the residuary legatees filed exceptions. Upon petition of decedent's brother and sister averring that the executrix had removed the securities belonging to the estate out of the Commonwealth, the court entered an order directing her to return such assets within the state and to place them in the Bellefonte Trust Company, Bellefonte, Pennsylvania, as depository. An auditor was appointed to pass upon the exceptions to the account, examine and ascertain all assets belonging to the estate of the decedent at the time of his death, to restate the account, and prepare a schedule of distribution.

After numerous hearings and the lapse of several years the auditor finally filed his report on March 9, 1935. He sustained in general, the exceptions to the account of the executrix, and restated the account, surcharging the accountant executrix with the sum of $33,-044.14, in addition to the amount of personal property shown in the account. The auditor allowed credits to her amounting to $12,337.46 reducing the net surcharge to $20,706.68. In listing the assets of the estate as di-

rected by the court, the auditor placed the value of $24,075.00 upon the real estate owned by the decedent and in which the executrix took a life estate under the will; inasmuch as this property did not come into her hands as executrix, she was not surcharged with its value.

Meanwhile, on December 1, 1934, the widow executrix died, a resident of Maryland, and her position in the litigation was assumed by the two executrices, Adeline M. Hibschman and Adelaide J. McDonald, designated in her will. On December 5, 1934, letters of administration d. b. n. c. t. a. on the estate of this decedent, Irving L. Foster, were issued to Warren W. Foster.

Both sides filed exceptions in the court below to the report of the auditor. Before a hearing could be had, however, the executrices under the will of Nellie Patterson Foster resigned their office and were succeeded in the litigation by Blanche P. Miller, who had been appointed by the Register of Wills of Centre County as ancillary administratrix of the widow's estate in Pennsylvania. The latter also filed exceptions to the auditor's report. After argument the court below dismissed all the exceptions, save that to the fee of the auditor, which was reduced from $4,500.00 to $3,000.00. With this modification the report was confirmed. Blanche P. Miller, the ancillary administratrix, then took this appeal from the decree of the court below dismissing the exceptions filed by her to the auditor's report.

The primary question presented for our consideration is the construction of the will of decedent, dated October 1, 1898, and a codicil in decedent's handwriting, which bears the date of January 29, 1923.[1] It is admitted, as

[1] The pertinent portions of the will of decedent, dated October 1, 1898, and the codicil thereto dated January 29, 1923, read as follows:

*Will:* "I give, devise and bequeath unto my wife, Mrs. Nellie Patterson Foster, of the Borough of State College, County of Centre and State of Penna., and to her heirs and assigns forever, all

indeed it must be, that by his original will, which was executed within a few months after his marriage, the decedent gave his entire estate absolutely and in fee simple to his widow. Appellant, on behalf of the widow's estate, earnestly contends here that the codicil was ineffective to cut down the fee estate given in the will, and that therefore the widow was entitled to the entire estate to the complete exclusion of the decedent's brother and sister. The court below rejected this contention and decided that the absolute estate of the widow given by the original will was reduced to a life estate by the terms of the codicil. The principal of the estate, the court held, was to be divided at the widow's death between the brother and sister in the proportions as directed in the codicil.

The codicil was drafted by the testator himself, and it is, for a holographic instrument, unusually clear and discloses the intention of the testator. The will and codicil must, of course, be construed together as one instrument, and a provision of the codicil will be considered as revoking a provision of the will only to the extent necessary to give effect to the codicil: *Thomas's Estate*, 241 Pa. 290; *Schattenberg's Est.*, 269 Pa. 90; *Dutton's Estate*, 301 Pa. 94; *Warne's Estate*, 302 Pa. 386. However, the very purpose of a codicil is to alter or modify the

---

my real, personal and mixed property whereof I may die seized and possessed, consisting of all money, notes, mortgages, accounts, life insurance, building and loan stock, library, etc., and real estate."

*Codicil:* "It is my intent and purpose that the terms of the will herein made be changed to cover the proceeds of the property during the life of my wife, Nellie Patterson Foster. Upon her death the library is to go to The Pennsylvania State College. From the property is to be paid $1,000 to Brown University the income from which is to be used as a prize to the member of the Freshman Class who shall excell in the work in French. . . . The remainder of the property is to be divided among my brother, W. W. Foster, M.D., Washington, D. C., and my sister, Mrs. Hattie F. Moore, Chicago, Ills. on the basis of one-third to my brother and two-thirds to my sister."

will, and hence if there is any conflict the provision in the codicil must prevail: *Lewis's Appeal,* 108 Pa. 133; *Byrne's Estate,* 320 Pa. 513.

With these principles in mind, the purpose of testator as gathered from the codicil is apparent. At the very beginning thereof he expressed an intention to change the terms of his will. The will was written approximately twenty-five years before the codicil. After the lapse of years, testator took the original instrument and upon the reverse thereof he wrote the codicil, beginning with the words: "It is my intent and purpose that the terms of the will herein made be changed to cover the proceeds of the property during the life of my wife." The terms of his will, other than the naming of his executrix, were that his wife should have his entire estate absolutely. He could not bestow upon her a greater estate, hence, if the terms of the will with respect to the wife were to be changed at all, of necessity it would be to reduce her interest or estate, or to revoke the will entirely. From the language of the codicil it seems clear to us that there was a firmly settled dispositive purpose to change the absolute estate of his wife to a life estate. That he anticipated a residue of his estate is shown by his disposal of the "remainder of the property." When we consider the language of the codicil used in connection with the mention of his wife, viz.: "during the life of my wife, Nellie Patterson Foster," and in conjunction with his direction that the "remainder of the property" should pass to his brother and sister, we find the essential elements of a life estate in the widow, with specific provision for distribution of the estate upon her death.

Appellant urges that the word "property" as used in the codicil refers only to real estate, and that the codicil was effective only to change the disposition made in the will of the land which the testator owned. This argument is not tenable. The testator wrote the codicil himself. To the lay mind property naturally means personalty as well as realty: See *Moore's Estate,* 241 Pa.

253. Moreover, the context of the codicil evidences that the testator was using "property" in the most general sense. It is urged that the word "proceeds" is one of equivocal import, and that in the codicil it meant the price realized from the sale of the real estate. This argument depends largely upon the assumption that "property" refers only to real estate, and this assumption, as we have seen, cannot be sustained. When the codicil is read as a whole, it seems to us clear that in this instance the testator used "proceeds" in its not unusual sense of "income." While precedents in cases of this kind are of little value since different circumstances give rise to different meanings, "proceeds" has not infrequently been interpreted as denoting income: *Thomson's Appeal,* 89 Pa. 36; *Roberts's Appeal,* 92 Pa. 407; *Von Der Lindte's Estate,* 249 Pa. 220. So interpreted the codicil limited the estate given the widow to a life interest in the income from all of the testator's property.[2]

The remaining assignments of error relate to certain items of surcharge made by the auditor and affirmed by the court below. Particularly is complaint made of a surcharge against the executrix of the appraised value of certain bonds of a par value of $19,000.00. It is contended that these bonds belonged to the executrix personally, and at no time formed part of the decedent's estate. In support of her contention the executrix testified before the auditor that these bonds were in the decedent's safe deposit box at the time of his death, in an envelope with her name on it, that they belonged to her and had been purchased with her own money. She also testified that she and her husband maintained separate

---

[2] See opinion of Mr. Justice DREW in the recent case of *Byrne's Estate,* 320 Pa. 513, for a discussion of the cases in this State dealing with the construction of wills, particularly where subsequent clauses contained therein are considered as indicative of an intention to reduce an estate of absolute ownership to one of lesser interest.

bank accounts, and that her husband was very particular that she keep her own money separate from his. The auditor found, however, and his finding was approved by the court below, that so far as the bonds in question are concerned they were purchased by the husband, and the coupons of these bonds were deposited in the husband's bank account. We have carefully examined the testimony and the numerous exhibits placed in evidence; there is ample support therein for the conclusion reached below. The bank deposit slips of both decedent and his wife were in evidence. Detailed examination of them shows that the coupons from the bonds in question were all placed in the husband's account, none in that of his wife. In view of her statement that their separate estates were kept apart at all times, we see no error in the finding of the court below.

Complaint is also made of an alleged surcharge against the executrix of the value of the real estate of which decedent died seized. As we stated above, no surcharge was made of the value of the real estate. The auditor, in restating the account added at the end, after listing the items of surcharge, the value of this real estate, in obedience to the direction of the court to appraise the assets of the estate. This was not, however, made a part of the account as restated, but was an entirely separate item. The assignment of error relating to this alleged surcharge lacks foundation in fact, and must be dismissed.

It is further contended that the court below erred in surcharging the executrix with the sum of $5,000.00 representing the value placed upon a certain copyright which had belonged to the decedent. During his lifetime the decedent had written several books, published by Ginn & Company, and was the recipient of royalties therefrom. After his death these royalties were paid to the widow executrix. She did not, in either her inventory or her account, list the copyright as an asset of the estate. The auditor, after a consideration of the annual

48

income realized from this source, placed a value on the copyright of $5,000.00, and surcharged the executrix with this sum. This was error. The royalty right was not sold or disposed of by the widow and is properly an asset of the decedent's estate. The most that the residuary legatees are entitled to is this same asset. It was error, therefore, to surcharge the executrix with any fixed sum for this item of the decedent's property. The residuary legatees will receive all to which they are entitled if an assignment is made to them in proper form, so as to give them in the future the right to such royalties as may accrue under the contract which the decedent made with Ginn & Company. The decree of the court below should be modified so as to direct the personal representative of the deceased executrix to make such assignment as may be necessary to transfer this interest, and the sum of $5,000.00 should be deducted from the surcharge against the executrix. We find no merit in the remaining assignments of error.

The decree of the court below is modified, and as modified is affirmed; costs to be paid by appellant.