ROSALIE V. SMITH, *et al.*

*v.*

SOPHA MAY SMITH, *et al.*

(No. 10216)

Submitted April 12, 1950. Decided October 31, 1950.

844

Fox, JUDGE, concurring.

*Walter F. Ball, Paul J. Shiben,* for appellants.

*Martin Brown,* for appellees.

RILEY, JUDGE:

Rosalie V. Smith, and Sandra Sue Smith and Gary James Smith, infants by Rosalie V. Smith, their next friend, brought this suit in equity in the Circuit Court of Wetzel County against Sopha May Smith, in her own right and as executrix of the estate of James W. Smith, deceased, Sopha May Smith, as guardian of Robert J. Smith during his infancy, and J. E. Shull, as administrator with the will annexed of Robert J. Smith, deceased, praying for a construction of the will of James W. Smith, consistent with the contention contained in plaintiffs' bill of

complaint, and for an accounting by Sopha May Smith, the widow of the testator, James W. Smith, upon the basis of the construction of the will contended for by plaintiffs. The plaintiffs prosecute this appeal from a decree entered by the Circuit Court of Wetzel County (1) overruling plaintiffs' demurrer to the answer of Sopha May Smith; (2) construing the testator's will to mean that the testator devised and bequeathed to his widow, Sopha May Smith, an estate in all of his property (not otherwise specifically bequeathed to others than testator's widow, Sopha May Smith, and his son, Robert J. Smith, deceased, at the time this suit was instituted), for and during her life or widowhood, with full power in the widow of disposal and consumption, if necessary of all or any part of the principal and income, or either, of the property belonging to testator's estate for Sopha May Smith's sole support and maintenance (and to the exclusion of the right of Robert J. Smith and of the plaintiffs, or any of them, as the heirs of Robert J. Smith upon his death, to any part of such principal and income, or either, for support and maintenance or otherwise,) during the life or widowhood, as the case may be, of the said Sopha May Smith, with remainder of said estate, if any there be, on the death or remarriage, as the case may be, of Sopha May Smith, to Robert J. Smith, with Sandra Sue Smith and Gary James Smith having succeeded to such remainder upon the death of Robert J. Smith, the subject of the dower interest of Rosalie V. Smith in such remainder; and (3) assessing the court costs against testator's estate.

The bill of complaint alleges that the testator, James W. Smith, late a resident of Wetzel County, West Virginia, died on October 18, 1928, leaving his last will and testament duly probated in the county court of said county; that the defendant, Sopha May Smith, is the widow of the testator, James W. Smith, and executrix under the testator's will; that by the will Sopha May Smith was designated by testator as the guardian of Robert J. Smith, the only child born of the marriage of Sopha May Smith and James W. Smith; that Robert J. Smith was born on Janu-

ary 28, 1914, and that on or about December 1, 1944, while a resident of Wetzel County, he died leaving a will dated January 16, 1935, made in contemplation of marriage with Rosalie V. Shull, now Rosalie V. Smith, in which he devised and bequeathed one-half of his property to the said Rosalie V. Shull, and provided that if he should be married to her and she become his lawful wife, that his entire estate should go to her. The pertinent paragraphs of the last will and testament of James W. Smith are the ninth, tenth, eleventh and fifteenth thereof, which read, respectively, as follows:

"9th   I will and bequeath jointly to my wife Sopha Mae and my Son Robert Smith all the remainder of my property except what I have disposed of above in this my last Will and Testament and debts that I owe at my death. This includes all real estate Bonds, Stocks, moneys, notes Book Accounts and All other effects of value, to have and to use all the proceeds that is necessary for the comfort of my wife Sopha Mae and Robert Smith so long as my wife Sopha Mae Smith remains my widow. If Sopha Mae Smith should die or remarry it is my will that my Son Robert Smith shall become heir to all the unused remaining portion of my estate and the dividends and revenues unused at the time of my wife Sopha Mae Smith death or remarriage.

"10th   I will that my wife Sopha May Smith act as administrator of my estate and Guardian for my Son Robert Smith, without appraisement of property or giving any Bond for Custody of same, giving her full authority to collect all debts and dividends '*useing*' all or as much as is necessary for maintenance and comforts of her self and Schooling and all other needs of my Son Robert Smith.

"11th   It is my will that no Realestate Stocks or Bonds be sold for a period of twenty years from my death, excepting such realestate that should go that is under option and all stocks and Bonds that become due or is called for payment and Burial Lots near Harmony Cemetery.

"No. 15 If my wife Sopha May Smith should remarry and afterward become in need of further *suport* It is my Will that my Son Robert provide :her a good home and the *nessary* comforts of life if there is enough of my estate to do so, or any portion of my estate it may require."

At this point we note that the name of the testator's widow, Sopha Mae Smith, as designated in the will, appears in the caption of this suit and in the pleadings as Sopha *May* Smith.

Plaintiffs' original and amended bills of complaint allege that, under a true construction of the James W. Smith will, and specifically the four above-mentioned paragraphs thereof, at the time of the death of James W. Smith an undivided one-half of his estate became vested in fee and absolutely in Robert J. Smith, subject to Sopha May Smith's control thereof as his guardian during his infancy only; and that there became vested in Sopha May Smith a determinable life estate in the remaining portion, that is one-half thereof (that is an estate for life subject to termination by Sopha May Smith's remarriage), "the related clauses specifying that she is 'to have and to use all (the word "all" having reference to the remaining one-half aforesaid) the proceeds that is necessary for the comfort of my wife Sopha Mae * * * so long as my wife Sopha Mae Smith remains my widow' "; but upon the further qualification that "If Sopha Mae Smith should die or remarry, it is my will that my Son Robert Smith * * * shall become heir to all the [unused] remaining portion of my estate and the dividends and revenues unused at the time of my wife Sopha Mae Smith death or remarriage"; and that as provided in the eleventh paragraph "* * * no Real-estate Stocks or Bonds be sold for a period of twenty years from my death, * * *." The bill of complaint further alleges that plaintiffs are informed that Sopha May Smith claims the entirety of said estate of James W. Smith under his will as and for her own, to the exclusion of any interests therein of the plaintiffs.

The original and amended and supplemental bills further allege that the birth of the plaintiffs, Sandra Sue Smith and Gary James Smith, subsequent to the making and execution of Robert J. Smith's will had the effect of revoking said will in so far as such infants are concerned, and, consequently, they inherited from their father as though he had died intestate, and, accordingly, the plaintiff, Rosalie V. Smith, acknowledges such rights of inheritance, notwithstanding the provisions of the will of Robert J. Smith. At this point we note that, because Robert J. Smith's will made provision for his prospective wife, Rosalie V. Smith, and the will was made in contemplation of his future marriage, it was not revoked under Code, 41-1-6; but the children born of the marriage, Sandra Sue Smith and Gary James Smith, if they have any interest, take under the laws of descent and distribution from their father and not by his will.

The defendants' demurrer to plaintiffs' original and amended and supplemental bills of complaint was overruled by the trial court on the ground that James W. Smith's will is ambiguous and should be construed, but as to the other relief sought by plaintiffs the court stated in its memorandum that the granting of such relief depended upon the final interpretation of the James W. Smith will; and that it was unnecessary for the court to pass upon the sufficiency of the allegations in support of such other relief.

The defendant, Sopha May Smith, in her own right, and as guardian, filed in writing a renewal of the demurrer to plaintiffs' original and amended and supplemental bills of complaint, and her joint and separate answer, in which she alleged that the last will and testament of James W. Smith, deceased, had been construed by the Circuit Court of Marshall County in a certain proceeding in equity, entitled Sopha May Smith, Guardian of Robert J. Smith, a minor, v. Robert J. Smith, authorizing and confirming the lease of certain property in Marshall County, which lease was dated September 24, 1932.

The joint and separate answer of Sopha May Smith in general denies the allegations of the original and amended and supplemental bills of complaint that as executrix she has failed to make a settlement of the estate of her decedent and avers that a settlement was made "in accordance with the statute in such case provided, which was duly confirmed and recorded in the office of the Clerk of the County Court of Wetzel County, West Virginia"; and denies further that she has wrongfully refused and still refuses to distribute the estate vested in her and to account therefor to the plaintiffs. She further denies that the plaintiff, Rosalie V. Smith, and the children, Sandra Sue Smith and Gary James Smith, have any interest in the estate which gives the circuit court jurisdiction to grant any relief prayed for; and further answering the original and amended and supplemental bills of complaint says that the property in question was vested in her upon the death of her husband, James W. Smith, under the terms of decedent's last will and testament and "is her sole property to use as directed in said will, and that one-half thereof, as alleged in said bills of complaint, does not belong to plaintiffs."

The circuit court overruled plaintiffs' demurrer to the defendants' joint and separate answer, and by written memorandum of opinion, made a part of the record, held that plaintiffs had no interest in the estate of James W. Smith prior to the death or remarriage of his widow, Sopha May Smith; and from an examination of paragraphs nine and ten of the will it appears that testator intended to give to his widow the right "to dispose or consume the entirety of his estate, if necessary, for her maintenance and comfort and for the maintenance and education of her son"; that the prior death of the son, Robert J. Smith, did not take from his mother possession, control or right of disposal of the property for her maintenance, if necessary; and until her death or remarriage "there can be no deprivation of these rights by the plaintiffs"; and on this holding, as disclosed by the Court's memorandum, the decree complained of was entered.

So, initially, the controlling and all-embracing question presented on this record is.whether, as defendants contend and the trial chancellor held, the defendant, Sopha May Smith, had the right to dispose of and consume all of the estate that might be necessary for the comfort, maintenance and education of her son, Robert J. Smith, and the possession, control and right of disposal for her maintenance, if necessary, which rights extended until Sopha May Smith's death or remarriage; or whether the construction contended for by plaintiffs should be adopted.

The trial court properly overruled defendants' demurrer to plaintiffs' bill of complaint. The bill of complaint is one filed purely for the construction of an ambiguous will. Code, 41-3-7. According to the Revisers' Note, this section was "intended to confer general equity jurisdiction to construe ambiguous wills." It reads: "Notwithstanding any other provision of law, and notwithstanding there is no other ground of equity jurisdiction, courts possessing general equity powers shall have and take jurisdiction of a suit to construe an ambiguous will at the suit of the executor, or administrator with the will annexed, or *of any beneficiary thereunder whose interests are affected by a construction of the ambiguous provision.*" (Italics supplied.) In *Brookover* v. *Grimm, et al.,* 114 W. Va. 701, 174 S. E. 567, this Court held in point 1 of the syllabus: "A suit in chancery to construe an ambiguous will may be maintained under Code, 1931, 41-3-7, by the executor or administrator, with the will annexed, or a beneficiary thereunder, whose interests are to be affected, without the aid of an independent ground of equity." Thus it has also been held that a court of equity will entertain jurisdiction to construe a will rendered ambiguous by testator's widow's renunciation thereof. *West* v. *West,* 116 W. Va. 378, 180 S. E. 433. Though this case does not involve a widow's renunciation of a will, if the instant will is ambiguous so as to require an interpretation thereof, a court of equity has jurisdiction to construe it. The briefs of counsel bearing on paragraphs nine, ten and eleven of the will of the decedent, James W. Smith, indicate that

the will under appraisement is ambiguous. Only a cursory glance at these three sections of the will shows that there is grave doubt as to the intent of the testator in using the words contained in these paragraphs of the will. Paragraph nine, in the first place, devises and bequeaths jointly to testator's widow, Sopha May Smith, and his son, Robert Smith, "all the remainder of my property except what I have disposed of above in this my last Will and Testament and the debts which I owe at my death." Then the paragraph provides for the right to use all of the "proceeds" which are necessary for the comfort of testator's widow and son, so long as testator's wife remains his widow. Instantly the question arises whether the word "proceeds" embraces the use of both the corpus and income of the estate, or just the income. Then again paragraph nine provides that upon the death or remarriage of testator's widow, his son, Robert, shall become heir to "all the unused remaining portion of my estate and the dividends and revenues unused at the time of" the widow's death or remarriage. Paragraph eleven of the will provides that "no Realestate Stocks or Bonds" shall "be sold for a period of twenty years from my death, excepting such realestate that should go that is under option and all stocks and Bonds that become due or is called for payment and Burial Lots near Harmony Cemetery." And finally paragraph fifteen provides: "If my wife Sopha May Smith should remarry and afterward become in need of further *suport* It is my Will that my Son Robert provide her a good home and the *nessary* comforts of life if there is enough of my estate to do so, or any portion of my estate it may require." Truly, this will is ambiguous, and by the same token, under Code, 41-3-7, a court of equity has jurisdiction to interpret such will. If it did not, the remedial provisions of Section 7 which were designed to cut the Gordian knot, which the decisions of *Buskirk* v. *Ragland,* 65 W. Va. 749, 65 S. E. 101; and *Martin* v. *Martin,* 52 W. Va. 381, 44 S. E. 198, placed around the power of the courts having constitutional authority in this State to construe ambiguous wills, would be without effect.

As the decedent, James W. Smith, departed this life on October 18, 1928, Code, 36-1-16, enacted into law with the adoption of the Official Code of 1931, did not of itself operate to preserve the special limitation over upon the death or remarriage of Sopha May Smith to Robert J. Smith, this case must be appraised in the light of the rules of construction governing wills with the limitation over either by way of remainder or executory devise, or any other limitation which prevailed prior to the adoption of the 1931 Code. It is contended by counsel for plaintiffs that, if their contention that Robert J. Smith owned the one half life estate on the special limitation with remainder in fee, is not sound, each of the life tenants would have an undivided interest in fee, because the will gave an absolute power of disposal to both. If under this will, Sopha May Smith was given a life estate in one-half of all of the residue of the property devised and bequeathed by decedent, after the payment of specific bequests, subject to an earlier determination of the estate in the event of her remarriage, coupled with the unrestricted right to appropriate to her own use all of the corpus and income thereof, she would have been vested with a fee simple estate in said one-half interest by the testator's will under the holding of this Court of *Grimmett* v. *Meadows,* 116 W. Va. 384, 180 S. E. 534; *National Surety Company* v. *Jarrett,* 95 W. Va. 420, 121 S. E. 291, and like cases. And the same rule would apply to Robert J. Smith as to his life estate *pur autre vie.* But such was not the disposition contemplated by the testator, as disclosed by the provisions of his will, and the foregoing cases should be distinguished from the instant case.

Unlike the wills in the *Grimmett, National Surety Company* and kindred cases, the instant will does not provide for the unlimited power of disposal of testator's estate by Sopha May Smith or Robert J. Smith, or both. The devise and bequest to Sopha May Smith and Robert J. Smith for life upon a special limitation that the dominant life estate of Sopha May Smith shall terminate either on her death or remarriage, was limited by the

provisions of the will both as to time and as to purpose. The time limitation, which is contained in paragraph eleven, provides that no real estate, stocks or bonds shall be sold for a period of twenty years after testator's death, "excepting such realestate that should go that is under option and all stocks and Bonds that become due or is called for payment" and certain burial lots. The restrictions as to purpose for which testator devised and bequeathed the life estates to Sopha May Smith and testator's son, Robert J. Smith, are found in paragraphs nine and ten. In paragraph nine, it is provided that Sopha May Smith and Robert J. Smith shall have and use "all the proceeds" of the property devised and bequeathed to them during the life or widowhood of Sopha May Smith that "is necessary for the comfort of my wife Sopha Mae and Robert Smith so long as my wife Sopha May Smith remains my widow." In paragraph ten it is provided that testator's wife, Sopha May Smith, shall act "as administrator" of testator's estate and guardian of testator's infant son Robert J. Smith with "full authority to collect all debts and dividends 'useing' all or as much as is necessary for maintenance and comforts" of testator's widow and "Schooling and all other needs of my Son Robert Smith."

In *Stout* v. *Clifford*, syl., 70 W. Va. 178, 73 S. E. 316, this Court in interpreting a will probated before the enactment of Code, 36-1-16, held that a will devising and bequeathing to testator's widow all his real estate and personal property, and that after the widow's death "the property if any is left shall be divided *eucely amoung*" the testator's children, held that the will gave to testator's widow "only an estate for life, with the remainder to testator's children vesting at his death."

In *Smith* v. *Smith*, 122 Va. 341, 355, 94 S. E. 777, 780, the Virginia Court stated the doctrine governing life estates with full power of disposal in the following language: "Where the limitation is of a life estate, but there is given full power of disposition over the fee, which is conferred without limitation or restriction as to time, mode, or pur-

pose of its exercise, such full power of disposition would serve to enlarge the life estate expressly given into a fee simple by implication."

In *Taylor* v. *Taylor*, 176 Va. 413, 11 S. E. 2d 587, the Virginia Court held that in order to invoke the operation of the doctrine of *May* v. *Joynes*, 20 Gratt. 692, which is the counterpart of the West Virginia case dealing with the same subject matter of *Morgan* v. *Morgan*, 60 W. Va. 327, 55 S. E. 389, that the life tenant must be clothed with full power of disposition over the fee "without limitation, or restriction, as to time, mode or purpose * * *." See excellent comment on the *Taylor* case and the effect of the validity of a remainder after a life estate with limited power of disposition in the life tenant in 27 Virginia Law Review 720. See also 7 M. J., Estates, Section 7.

The rule of *May* v. *Joynes, supra,* is harsh indeed. It has often been applied by the courts of the Virginias to thwart the intent of a testator. In the case of *Swan* v. *Pople,* 118 W. Va. 538, 190 S. E. 902, the rule is termed as being archaic. Because that rule, as applied to wills probated before the enactment of Code, 36-1-6, often serves to destroy the intent of the testator, we are constrained to apply the holding of this Court in the case of *Stout* v. *Clifford, supra,* and not apply it here.

The basic questions pertinent to the interpretation of this will are: (1) What estate or estates vested under the provisions of the testator's will; and (2) what control, if any, testator's widow, Sopha May Smith, has with reference to the use and expenditure of the corpus and the income of the estate?

In the first place, we think that the widow, Sopha May Smith, received a determinable life estate in an undivided one-half of the residue of the estate after the payment of debts and certain specific bequests, which life estate was terminable upon the expiration of the widow's life upon a special limitation, that is, "so long as my wife Sopha Mae remains my widow." Spitz on Conditional and Fu-

ture Interests in Property (1919), pages 4 and 5. On the other hand, disregarding for the moment the provisions of the will as to the purposes and the conditions upon which the life estates were created, testator's son, Robert J. Smith, became vested at testator's death with an estate *pur autre vie* of his mother, Sopha May Smith. Conventry's Coke Upon Littleton, 1830 (41b), Chapter 6, Section 56.

Both the estates of the tenant for life and the tenant *pur autre vie* are terminable upon a special limitation because of the use of the words "so long as". Words of the same character, such as "while, until and during" are commonly used to create a limitation. The appropriate Latin words, being *quamdiu, dummodo, dum, quousque* and *durante,* are used variously in the older works in cases involving future interests. A special limitation unlike a condition subsequent is a part of the estate, which it limits, and determines the quantum of the estate itself. Spitz on Conditional and Future Interests in Property, pages 4 and 5; 2 Reeves, Real Property, Section 727; Gray on Perpetuities, Section 32. As the limitation in the instant case is a part of, and marks the quantum of the life estate of testator's widow and the tenant *pur autre vie,* the remainder succeeding the life estates became vested in Robert J. Smith at the time of the testator's death.

The remainder after the termination of the life estates, whether such termination occurs by reason of the death of Sopha May Smith or by the operation of the special limitation predicated upon her remarriage, is truly a vested remainder. We say this because it is a remainder which is capable of taking effect immediately in possession whenever, as provided by the will, the preceding estates determine. Spitz on Conditional and Future Interests in Property, page 233; Gray, The Rule against Perpetuities, 3d ed., Section 9. And the uncertainty of ever taking effect in possession does not make a remainder, having the foregoing prerequisites of a vested remainder, a contingent remainder. "The present capacity of taking

effect in possession, if the possession were to become vacant, and not the certainty that the possession will become vacant before the estate limited in remainder determines, universally distinguishes a vested remainder from one that is contingent." Fearne, Essay on the Learning of Contingent Remainders and Executory Devises, First American from the Sixth London Edition (1819), Section 7, pages 215, 216, and 217. See generally *In re: Conley*, 122 W. Va. 559, 12 S. E. 2d 49, pt. 4 syl.

It now becomes necessary for us to address ourselves to the second question arising in the interpretation of this will: What control, if any, has testator's widow, Sopha May Smith, with reference to the use and expenditure of the corpus and the income of the estate? As the provisions of the will bearing on testator's intention as to his widow's use of the property are ineptly drawn, the words used therein should not be given their technical meaning, and the questions presented to this Court on the interpretation of the instant will are not without difficulty.

The ninth paragraph of testator's will, after devising and bequeathing jointly to his widow and son all of his property, less that disposed of in the preceding paragraphs of the will and debts which testator owed at the time of his death, provides that such property shall include "all real estate Bonds, Stocks, moneys, notes Book Accounts, and all other effects of value"; and further that the widow and son shall have the right "to have and use all the *proceeds* that is necessary for the comfort of my wife Sopha Mae and Robert Smith so long as my wife Sopha Mae remains my widow." (Italics supplied). The use of the word "proceeds" in this second sentence of paragraph nine of the will presents the first ambiguity which we encounter in the interpretation of this will.

Does the right of the testator's widow and son "to have and to use all the proceeds" include income or principal or both? This question cannot, and should not, be answered without reference to the other pertinent parts of the will. As to the import of the word "proceeds" the

courts are not in harmony. In *In re Foster's Estate,* 324 Pa. 39, 178 A. 399, it was held that the word "proceeds" is frequently interpreted as denoting income. In *Browning* v. *Ashbrooke's Executor,* 175 Ky. 755, 195 S. W. 105, the Court held that the term "proceeds" used in a will which gave to testator's wife all of the "proceeds" of the estate as long as she remained testator's widow, meant income. In *Appeal of Roberts,* 92 Pa. 407, 419, the term "proceeds" used in a will devising property to trustees and directing the trustees to distribute the proceeds thereof in a desig- . nated manner, was construed to mean income. But in *Allen* v. *Barnes,* 5 Utah 100, 12 P. 912, the Court held that the word "proceeds", as used in a will which provided that certain sums shall be paid to designated persons out of the "proceeds" of the estate, does not mean income. In *Meyer* v. *Eichenbaum,* 197 Ark. 650, 124 S. W. 2d 830, 831, it was held that the word "proceeds", when used in testamentary matters, indicates income or interest, unless the context indicates a different idea or meaning.

In the appraisement and interpretation of this will, we are not at liberty to take the isolated word "proceeds" in order to determine testator's intention as to the use of the corpus and income of his estate. In the construction of a will the intention of the testator is controlling and " 'to this end the court will consider the whole paper together, the apparent purpose sought to be accomplished by the testator, and the means used to that end, as well as any other circumstances disclosed by the will which aid in determining such intention.' *Woodbridge* v. *Woodbridge,* 88 W. Va. 187, 106 S. E. 437". *Harris* v. *Eskridge,* 124 W. Va. 283, pt. 2 syl., 20 S. E. 2d 465. In view of the doubt cast on testator's intention by the word "proceeds" in the second sentence of paragraph nine of the will, recourse must be taken to the other parts thereof. Most illuminating, in indicating the testator's intention as to the use of the corpus and income of his estate, is the final sentence of paragraph nine, which provides: "If Sopha Mae Smith should die or remarry it is my will that my Son Robert Smith shall become heir *to all the unused remaining por-*

*tion of my estate and the dividends and revenues unused,"* (italics supplied) at the time of the death or remarriage of testator's widow. In the foregoing sentence the testa-. tor expressed clearly his intent that the use of "all of the proceeds that is necessary for the comfort" of testator's widow and son so long as the former remains his widow, meant the use, if necessary, of both the corpus and the income of the estate. Otherwise testator, in providing for the remainder to his son, Robert J. Smith, in the last sentence in paragraph nine, would not have employed the word "unused" in reference to the remaining portion of his estate, as well as the "dividends and revenues." The word "unused" is repeated in this sentence so as in one instance to refer to the corpus and in the other to refer to the income of the estate.

But in paragraph ten of the will testator appoints his wife as executrix of his estate and as guardian of his son Robert, and gives to her full authority to collect all debts (evidently meaning money due to testator at the time of his death) and "dividends" with the right to use "all or as much as may be necessary for the maintenance and comforts of her self and Schooling and all other needs of my son Robert Smith." Paragraph ten standing alone might indicate that testator intended to confine the power of disposal to the income or "dividends" derived from his estate; but if such interpretation is placed upon paragraph ten, it would render meaningless the provision in the last sentence of the preceding paragraph to the effect that Robert Smith, as remainderman, shall have the "unused" remaining portion of testator's estate, and the dividends and revenues "unused" at the termination of the determinable life estate in Sopha May Smith, and the determinable estate *pur autre vie* in his son, Robert J. Smith. We think that under a fair appraisement of this will, the evident intent of the testator, in view of the fact that his son, Robert J. Smith, at the time of testator's death was an infant under the age of twenty-one years, gave to the widow the full and absolute power to dispose of both principal and income of testator's estate as might be

"necessary" for the maintenance of her and her son, and the education of her son, subject to the further provision contained in paragraph eleven of the will that "no Real-estate Stocks or Bonds be sold for a period of twenty years from my death, excepting such realestate that should go that is under option and all stocks and Bonds that become due or is called for payment and Burial Lots near Har-mony Cemetery."

Our position seems tenable, not only in view of the wording of the last sentence of paragraph nine of the will, which contains the words "the unused remaining por-tion" both as to the testator's "estate" and the "dividends and revenues" unused at the time of the death or remar-riage of Sopha May Smith, but for the further reason that paragraph fifteen provides that if testator's widow should remarry, and afterwards become in need of sup-port, testator's son shall provide her a good home and the necessary comforts of life, "if there is enough of my estate to do so, or any portion of my estate it may require." Thus paragraph fifteen, as well as the said last sentence of paragraph nine, seems to be consonant with other pro-visions of the will, and clearly indicates that testator in-tended that during his widow's life estate and before her remarriage, both the principal and income of the estate may be used as may be necessary for the comfort of tes-tator's widow and the comfort and schooling of testator's son Robert, even to the exhaustion of a part, and, if nec-essary for such purposes, of the whole of the corpus of the estate; and it is because of the wording of the last sentence of paragraph nine and the provision contained in paragraph fifteen that we think the case should be distinguished from that part of the case of *Stout* v. *Clif-ford, supra,* in which the will under consideration con-tains no power of disposal of the principal as is impliedly contained in paragraph eleven to be exercised after the period of twenty years from testator's death, nor does it contain a provision such as the last sentence of paragraph nine of the instant will, which, in providing for the vested remainder in Robert J. Smith, deals separately with both

the principal and income of decedent's estate unused at the death or remarriage of testator's widow..

In this opinion we are considering the case on a rehearing. The position which we have heretofore taken in this opinion is the same as that contained in the first opinion,. and now on this rehearing counsel for plaintiffs in their petition for a rehearing and their brief assert that in the former opinion, there is "An irreconcilable conflict" between "(a) the portion of the decision which determines the testator's son to be the owner of an undivided one-half interest in the testator's estate lasting for the life or widowhood of the testator's widow, and (b) the portion of the decision which denies unto the petitioners [the plaintiffs], as the successors in title of the testator's son, in whole or in part any and all of the income incident to such ownership measured in terms of duration of the life estate after the son's death." With this position, with all deference to counsel, we do not agree.

In the first place, applying the rule heretofore quoted from Fearne, Essay on the Learning of Contingent Remainders and Executory Devises, First American from the Sixth London Edition (1819), Section 7, pages 215; 216, and 217, we have held that the remainder to Robert J. Smith, after the death or remarriage of his mother, Sopha May Smith, because it will take effect in possession immediately upon the expiration of the preceding freehold estate, that is upon the death or remarriage of testator's widow, one of which events will surely happen to terminate the life estate, is a vested remainder. Of course, the remainder being vested, vested in interest at testator's death, but in possession at the termination of the life estate upon the special limitation. In *Stout v. Clifford, supra,* page 185, this Court said: " 'Vested remainders' are those by which a present vested interest passes to the party, though to be enjoyed in future, and by which the estate is invariably fixed to go to a certain person after the particular estate is spent." The last section of paragraph nine of the instant will expressly pro-

vides for a vested remainder in Robert J. Smith, taking effect in possession upon the death or remarriage of his mother, Sopha May Smith: "If Sopha Mae Smith should die or remarry it is my will that my Son Robert Smith shall become heir to all the unused remaining portion of my estate and the dividends and revenues unused at the time of my wife Sopha Mae Smith death or remarriage."

But, if we understand the position of counsel for plaintiffs, in their very able arguments and briefs, they assert that, notwithstanding there is a remainder in Robert J. Smith, vesting in interest at the time of testator's death, and taking effect in possession upon the death or remarriage of testator's widow, Sopha May Smith, the dominant life estate upon the special limitation in Sopha May Smith not having expired, and Robert J. Smith having died prior to the expiration of Sopha May Smith's life estate, the income from his estate *pur autre vie* continued until after the life of Robert Smith, because it was an estate not for Robert J. Smith's life but for the life or until the remarriage of Sopha May Smith, his mother, one of which must surely occur. Therefore, it is argued that plaintiffs are entitled, until the death or remarriage of Sopha May Smith to one-half of the income derived from testator's estate until the death or remarriage of Sopha May Smith; and that upon the happening of either event they are entitled to the whole of the corpus, or any unused part of the income, and it is on this basis that plaintiffs' counsel assert that plaintiffs are entitled to an accounting at the hands of Sopha May Smith. This position does not take into consideration the general overall intent of the testator, as disclosed by the provisions of his will. At the time the will was executed, yes, and even at the time of testator's death, when testator is deemed to speak through his testamentary paper, his son Robert was an infant of thirteen or fourteen years of age, at which time, in the ordinary course of events, he was incapable of taking care of and supporting himself, and had not fully completed the education which his father desired him to have. In these circumstances, as portrayed

by this record, the testator had in mind the security and comfort of both his wife, Sopha May Smith, and his infant son, Robert J. Smith; and with this evident intent in mind he provided both that until Sopha May Smith died or remarried, such of his estate should be used for the comfort of both his wife and son and for the education of his son. If the power existed to so use the corpus and income of the testator's estate, and if such power resided under the testator's will in both Sopha May Smith and Robert J. Smith, certainly at the latter's death any power as to the use of testator's estate, which Robert Smith may have had, must be held to have expired, and the whole to reside in Sopha May Smith, because a dead man cannot exercise a testamentary power, and Robert J. Smith being unmarried at the time of testator's death, it is almost unthinkable that the testator should be held to intend that any power or control over his estate should go to Robert J. Smith's future wife and to his unborn children. Again, because this will provides for the comfort and education of Robert J. Smith, it must be true that, with Robert J. Smith's death prior to the expiration of Sopha May Smith's life estate upon the special limitation, no part of either the corpus or income of the testator's estate should be used for the comfort or the education of a dead person, and if the testator had intended that any part of his estate should be used for the comfort and education of his son's future wife and unborn children, he could have so provided in his will, but this he did not do.

In arriving at the conclusion that the control and management of testator's estate for the comfort and security of testator's wife remains in her during the life estate upon a special limitation, we have not overlooked Code, 44-1-21, which provides, in effect, that an estate for the life of another shall be personal property and as such shall go to the personal representative of the party entitled to the estate. The evident purpose of this statute was to avoid some of the peculiarities of an estate *pur autre vie*, at common law. In the absence of statute, an

estate *pur autre vie,* being a freehold estate, but not an estate of inheritance, could not descend to the tenant's heirs as the law of descent applies only to estates in inheritance; ·it could not go to the tenant's executor or administrator, for, being a freehold, it was not.personal property; and, again, because it is a freehold it could not be devised. Tiedeman on Real Property ˙ (Third Edition), Chapter VI, Sections 782, 783. For special note· .on the West Virginia statute, see 1 Restatement of the Law, Property, Introduction Freehold Interest, Chapter 6, Section 151, page 799. In our opinion, the statute was enacted solely for the purpose of providing that an estate for the life of another, though it was a freehold at common law, is now, by virtue of the statute, personal property and as such passes at the tenant's death to his personal representative. While in the instant case Robert J. Smith's estate *pur autre vie* at his death passes as personal property to his personal representative for the purpose of administration under the law of distribution, the statute should not be invoked to thwart the overall intent of the instant testator to provide for the security and comfort of his wife, Sopha May ·Smith and his then infant son, Robert J. Smith. As we perceive that intent, the control of the estate, for the reasons hereinbefore stated, remains in testator's widow until at her death or remarriage, whichever happens first, the vested remainder takes effect. And this is so, no matter who at Robert J. Smith's death has the technical title to the estate *pur autre vie.*

During the operation of the twenty-year inhibitory period contained in paragraph eleven, testator's widow, Sopha May Smith, was not at liberty to dispose of any of the real estate, stocks, òr bonds, though such disposal might be necessary for her maintenance and the maintenance and education of testator's son Robert. It is to be noted, however, that testator died in 1928, and his will became effective as of that time, so at this time, when the testator's will is under appraisement and it becomes the duty of this Court to determine the intent of the

testator in the matter of the use and disposal of his estate, the twenty-year period has expired.

And, finally, when we say that the widow may use all of the corpus and income that may be necessary and is necessary for the maintenance of herself and was necessary for the maintenance and education of testator's son Robert, such necessary use is not the unbridled use: it is the reasonable use of the principal and income of the estate, in view of the standard of living to which testator's widow and son were accustomed.

We glean from a reading of the entire will, and especially paragraphs nine and ten thereof, that testator intended that there should be no extravagance in the management of his estate and no unrestrained dissipation thereof. And this very statement brings us to the question whether plaintiffs are entitled to an accounting. We note that, notwithstanding paragraph ten of the will provided for the appointment of testator's widow as executrix of the will and guardian of testator's then minor son, Robert J. Smith, without the necessity of an appraisement of this estate, or the giving of any bond, there was, in fact, an appraisement of this estate, and the widow as executrix filed her account as such executrix regularly before the commissioner of accounts. Of course, as we have construed this will, the widow is a life tenant, subject to an earlier termination of the life tenancy by the operation of the special limitation. She must exercise due and proper care in the management of this estate, and, in the reasonable use, as necessity may dictate, of the principal and income of the estate, there is nothing in this will to indicate that she is required to make an accounting. If she has, or is committing, waste, or if she is dissipating improperly the corpus of this estate to the detriment of the remaindermen, the latter have recourse to a court of equity to compel an accounting; but, in the absence of allegations in the instant bill of complaint showing waste or fraud or inequitable misfeasance, or use of the corpus of the estate in any manner other than

that provided for in the will, which would give rise to equitable relief, we cannot say that the plaintiffs have the right in the instant suit under the status of the pleadings filed to compel any relief as to an accounting.

The foregoing, we think, disposes of all the questions presented to this Court pertinent to a decision of this case, except the effect of the proceeding in the Circuit Court of Marshall County, in which the court confirmed a lease by Sopha May Smith, as guardian of Robert J. Smith, of her ward's interest in property in Marshall County belonging to the estate of the decedent, James W. Smith. It is contended by counsel for the plaintiffs that the court in that proceeding interpreted the will of decedent, James W. Smith. With this position we do not agree. The proceeding involved only an agreement of lease. A careful reading of the papers in that case discloses that the circuit court was not required and did not make any interpretation of the will of James W. Smith, and its findings in that proceeding are by no means *res iudicata* of the instant case.

For the foregoing reasons we affirm the decree of the Circuit Court of Wetzel County, in overruling the defendants' demurrer to plaintiffs' original, amended and supplemental bills of complaint, and in not requiring the defendant, Sopha May Smith, to account; but we reverse the decree of the circuit court in so far as it incorrectly decrees the interest and estate with which Sopha May Smith and Robert J. Smith became vested under the will of James W. Smith, deceased, and remand this cause with directions to enter a decree consonant with the principles herein enunciated.

> *Affirmed in part;*
> *reversed in part;*
> *and remanded with*
> *directions.*

Fox, JUDGE, concurring in the result:

I concur in the result of the opinion, prepared by Judge Riley, but with some of the reasonings by which that

result is reached, I do not concur. For example, if, as I understand the opinion to hold, the effect of the first portion of Paragraph 9 of the will of James W. Smith, is to devise his estate jointly to his widow and son, even though subject to the provisions contained therein relating to the support contained in said will of said widow, Sopha Mae Smith, and the son, Robert J. Smith, I do not see how the Court can escape holding that when Robert J. Smith died, and could no longer receive such support, his share in the estate passed to his heirs, but, of course, subject to the support provisions aforesaid. This I think would, logically, compel a further holding in favor of the contention of the plaintiffs in this suit. I cannot follow the reasoning by which this, to me, inescapable conclusion is avoided.

In my opinion, Robert J. Smith did not, by the first provision of Paragraph 9 of said will, receive any interest, other than that of remainderman, in the corpus and income of his father's estate, beyond the right to his maintenance and support, along with that of his mother, Sopha Mae Smith. It was provided in the will that this support of Sopha Mae Smith should end on her marriage, as, necessarily, it would end on her death; but, until the occurrence of one of such events, her right to support out of the whole of said estate continued regardless of what might happen to Robert J. Smith. The fact that he died did not affect her right of support from the whole of the estate of James W. Smith, even to the complete exhaustion thereof. It was only after the death or remarriage of Sopha Mae Smith that it was contemplated that the "unused" portion of the estate should pass to Robert J. Smith, and, naturally, would, under the statute, pass to his widow and heirs at law on his death. The will plainly so provides. Neither of these events having occurred, no present interest in the James W. Smith estate, in the sense of a right to possess the same or demand an accounting in respect thereto, has become vested in the widow and heirs at law of Roberet J. Smith, although on the death of Sopha Mae Smith, which is certain, or in the

event of her marriage, which is possible, the "unused" portion of the estate will pass to them, and they may be treated, as of this date, as having a vested remainder therein.

It may be said that the title to the James W. Smith estate must necessarily be vested in some person or persons. I think this is true. In my opinion, however, considering the evident intent of the testator, and reading the will as a whole, such title passed to, and remains vested in, Sopha Mae Smith, to the end that, if necessary, she is empowered to dispose of the same for her necessary support. Without such title she would not be able to use the estate for her support. Whether we treat it as a life estate, or some form of a defeasable fee, is not important. Of course, under the plain provisions of the will, her marriage would end her interest in the estate, and the same would pass to Robert J. Smith or his heirs, as under the will it will do on her death.

The application of these views would reach, by different reasonings, the same result as that stated in the opinion prepared by Judge Riley, and concurred in by a majority of the Court. This note is filed for the sole purpose of indicating my views as to the principles on which, as I think, the case should be decided, and not as registering any disagreement with the result reached by the majority.